2005 SD 61

**NORTHSTREAM INVESTMENTS, INC., Plaintiff and Appellant,**

v.

**1804 COUNTRY STORE CO., Defendant and Appellee.**

No. 23216.

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 2005.

Decided May 18, 2005.

Brent A. Wilbur of May, Adam, Gerdes & Thompson, Pierre, South Dakota, Attorneys for plaintiff and appellant.

James E. Carlon of Carlon Law Office, Pierre, South Dakota, Attorney for defendant and appellee.

VON WALD, Circuit Judge.

[¶ 1.] Northstream Investments, Inc. (Northstream) appeals from an order granting summary judgment in favor of 1804 Country Store Co. (1804). The trial court granted 1804's motion for summary judgment, and dismissed Northstream's complaint for foreclosure and collection on a loan agreement. Northstream claims that a genuine issue of material fact exists, and the trial court erred when it granted summary judgment. Reversed and remanded.

## FACTS

[¶ 2.] In August 1991 the Comptroller of the Currency (Comptroller) issued a cease and desist order to Security Bank of South Dakota, N.A., (Security Bank). Paul Nordstrom (Nordstrom) was president of Security Bank and was, along with his family, the bank's principal owner. Among other things the order prohibited Nordstrom from receiving any compensation that was not related to bank business. It also restricted Nordstrom from managing certain bank property. Security Bank consented to the order without admitting or denying any wrongdoing.

[¶ 3.] 1804 entered into a loan agreement with Security Bank on September 3, 1991. The agreement consisted of two promissory notes backed by a security agreement, a real estate mortgage, and a stock pledge. First National Bank of Pierre, South Dakota (First National) pur-

chased part of Security Bank's assets on May 26, 1992. This sale was carried out as part of a voluntary liquidation of Security Bank. The 1804 loan agreement was not one of the assets purchased by First National and remained in the hands of Security Bank.

[¶ 4.] In June 1992 Security Bank appointed Nordstrom as its liquidating agent. Security Bank notified Comptroller of its intent to liquidate and included notification of the asset purchase by First National. Comptroller acknowledged the voluntary liquidation and directed that it take place according to its Comptroller's Corporate Manual. Notice of the liquidation and the sale to First National was published in the local newspaper as required.

[¶ 5.] Security Bank held a director's meeting on December 22, 1992. The minutes of that meeting state that a motion was made to authorize Nordstrom to transfer the remaining assets of Security Bank to Northstream Investments, Inc. (Northstream) for an exchange of stock.[1] Northstream was Security Bank's holding company and as such the bank's last remaining stockholder. The motion passed unanimously. Northstream claims the 1804 loan was one of the assets transferred to it at that point.

[¶ 6.] Nordstrom received notice from his attorneys on January 15, 1993 that the liquidation was complete. On January 21, 1993, Security Bank filed its final report with Comptroller. With that report it surrendered its original bank charter certificate.

[¶ 7.] Harvey Wald, an officer of 1804, contacted First National about the 1804 loan after seeing the public notice of the sale and liquidation of Security Bank. It was his understanding that First National then held all of Security Bank's former assets. First National informed Wald that the 1804 loan was not one of the assets purchased from Security Bank.

[¶ 8.] Wald next contacted Nordstrom and was told that payment on the loan should be made to Northstream. Wald requested that Nordstrom provide written verification of an assignment between Security Bank and Northstream. Verification was never provided to Wald. 1804 made monthly payments to Northstream through October 1999. Northstream sent 1804 a notice of default and demand for payment in full on June 26, 2000. As of August 1, 2000 there was a principal sum of $131,610.09 still outstanding on the loan. That sum was accruing interest at the rate of 12 percent a year.

[¶ 9.] On August 3, 2000, Northstream commenced an action against 1804 to recover on the loan agreement. The complaint alleged that 1804 had defaulted on the loan. 1804 alleged in a motion for summary judgment that the loan was delivered in favor of Security Bank and the pleadings showed no assignment of the loan to Northstream. On October 20, 2000, Nordstrom recorded a written assignment of the 1804 loan from Security Bank to Northstream. The trial court denied 1804's motion on November 24, 2003, and in its order provided "it appear[s] that a genuine issue of material fact exists as to the authority of Paul H. Nordstrom to act as a liquidating agent on October 20, 2000."

[¶ 10.] Northstream filed its own motion for partial summary judgment on November 20, 2003 asserting there had been

---

1. A motion was made by Gaylord Norman to appoint Paul Nordstrom to serve as liquidating agent to transfer the remaining assets of Security Bank of South Dakota, N.A., to the bank's holding company, Northstream Investments, the sole remaining stockholder, for an exchange of stock. It was seconded by Marcy Nordstrom and passed unanimously.

a valid assignment of the loan. Subsequently, 1804 filed a cross-motion for summary judgment claiming that there had been no valid assignment. The respective motions for summary judgment were heard on January 21, 2004, and in a continued hearing on February 4, 2004. The trial court entered its order granting summary judgment in favor of 1804 on February 18, 2004. Notice of entry of the order was given to Northstream on February 19, 2004. Northstream filed a notice of appeal to this Court on April 8, 2004, asserting that genuine issues of material fact surrounding the validity of the assignment between Security Bank and Northstream do exist and, therefore, the trial court erred when it granted summary judgment to 1804.

## STANDARD OF REVIEW

■ [¶ 11.] This matter is before the Court on appeal from a grant of summary judgment. Our standard of review for the grant or denial of a motion for summary judgment is well settled.

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15-6-56(c). We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. *Bego v. Gordon,* 407 N.W.2d 801, 804 (S.D.1987). All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. *Morgan v. Baldwin,*

450 N.W.2d 783, 785 (S.D.1990). The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *Wilson v. Great N. Ry. Co.,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

*Holzer v. Dakota Speedway, Inc.,* 2000 SD 65, ¶ 8, 610 N.W.2d 787, 791 (quoting *Kimball Investment Land, Ltd. v. Chmela,* 2000 SD 6, ¶ 7, 604 N.W.2d 289, 292). However, the nonmoving party must present facts showing that a genuine and material issue for trial exists. *Cromwell v. Rapid City Police Department,* 2001 SD 100, ¶ 7, 632 N.W.2d 20, 23.

## ANALYSIS AND DECISION

■ [¶ 12.] Northstream asserts that the trial court erred when it granted summary judgment to 1804 and essentially determined that the loan between 1804 and Security Bank was not validly assigned. Northstream argues that a valid assignment from Security Bank to Northstream was made during the Security Bank Board of Director's meeting on December 22, 1992. According to Northstream, the document filed in October 2000 was merely a memorialization of the December 1992 assignment and was meant to give notice to future good faith purchasers as to what instruments Northstream held and the debt they secured.

[¶ 13.] 1804 asserts that no valid assignment was made between Security Bank and Northstream in December 1992. 1804 further argues that Nordstrom lacked the authority as liquidating agent to make an assignment to Northstream in October 2000.[2]

---

2. In its brief to this Court, 1804 also argues that any assignment between Security Bank and Northstream would have been in violation of state law and, alternatively, federal banking regulations. We find it is not necessary to reach these issues based on our decision regarding the genuine issues of fact that surround the validity of the alleged assignment in December 1992. It is also not necessary to determine the validity of the action

[¶ 14.] Generally, unless required to be in writing by operation of a statute, an oral assignment will be deemed valid. *Willow City Farmers Elevator v. Vogel, Vogel, Brantner & Kelly*, 268 N.W.2d 762 (N.D.1978). Also, the assignment of a note and mortgage does not need to be recorded to be valid. *State v. Coughran*, 19 S.D. 271, 103 N.W. 31, 35 (1905); *Richards Trust Co. v. Rhomberg*, 19 S.D. 595, 104 N.W. 268, 270 (1905).

[¶ 15.] Typically, any language, however informal, will be sufficient to show the intent of the assignor. *Fritzel v. Roy Johnson Const.*, 1999 SD 59, ¶ 10, 594 N.W.2d 336, 338, *overr'd on other grounds*, 2003 SD 27, 658 N.W.2d 775. It is the substance of the assignment rather than the form that is evaluated. *Atkins v. GE Capital Mortg. Services, Inc.*, 993 F.Supp. 1406, 1415 (M.D.Ala.1998). Regardless of how it is made, an assignment must contain clear evidence of the intent to transfer rights, must describe the subject matter of the assignment, and must be noticed to the obligor. *Tirgan v. Mega Life & Health Ins.*, 304 N.J.Super. 385, 700 A.2d 1239, 1241 (1997). In reviewing the intent to assign it must be clear that the party intended a present transfer of rights and did not merely bind himself to make a future transfer. Restatement (Second) of Contracts, §§ 324 & 330 (1981).

[¶ 16.] It has long been held that a " 'mortgage is only an incident to the debt it was given to secure, and cannot be separated therefrom[.]' " *Rhomberg*, 104 N.W. at 270 (quoting *Merritt v. Bartholick*, 36 N.Y. 44 (N.Y. 1867)). Therefore, the mortgage and the interest it secures travel together when assigned. According to South Dakota law, the creation of an interest in real property must be in writing. SDCL 44-8-1[3], 53-8-2[4]. This writing requirement includes the assignment of a mortgage. *Boekelheide v. Snyder*, 71 S.D. 470, 26 N.W.2d 74 (1947) (citing *Flinner v. McVay*, 37 Mont. 306, 96 P. 340 (1908)). Since a mortgage is not severable from the debt that it secures, the entire assignment transaction involving an interest in real estate must be in writing.

[¶ 17.] The question then becomes what constitutes a required writing under the law? The primary purpose of the Statute of Frauds is evidentiary in nature. Its intent is to remove uncertainty by providing written evidence of an enforceable obligation. *Jacobson v. Gulbransen*, 2001 SD 33, ¶ 26, 623 N.W.2d 84, 90. Therefore, any memorandum that reasonably identifies the subject matter of the action and is signed by the party to be charged will satisfy the statute's writing requirement. Restatement (Second) of Contracts, § 131 (1981).

taken by Nordstrom in 2000. Additionally, the trial court already determined at one point in the proceedings below that a genuine issue of material fact existed as to the action taken in 2000.

3. SDCL 44-8-1 provides: "A mortgage of real property can be created, renewed, or extended only by writing, executed with the formalities required in the case of a grant of real property."

4. SDCL 53-8-2 provides in pertinent part:

The following contracts are not enforceable by action unless the contract or some memorandum thereof is in writing and subscribed by the party to be charged or his agent, as authorized in writing:

\* \* \*

(3) An agreement for sale of real estate or an interest therein, or lease of the same, for a period longer than one year. However, this does not abridge the power of any court to compel specific performance of any agreement for sale of real estate in case of part performance thereof[.]

[¶ 18.] In regard to the type of notice that is due the obligor, no special form of notice is required; any notice is adequate, even if not formally given. The notice must reach the person to be notified in such a manner that a reasonable person would regard it as notice and be guided by it accordingly. *McGann v. Capital Sav. Bank & Trust Co.,* 117 Vt. 179, 89 A.2d 123 (1952). Even though the obligor has no actual knowledge of an assignment, if he has knowledge of such facts that would put a reasonable person upon inquiry, the effect is the same as if actual notice had been given. *Atlantic Life Ins. Co. v. First Nat. Bank,* 62 F.2d 586 (5th Cir.1933). However, this doctrine of presumptive or imputed notice is generally resorted to with reluctance and invoked only when it would be unconscionable to do otherwise. *R.F.C. v. Cody Finance Co.,* 214 F.2d 695 (10th Cir.1954).

[¶ 19.] As stated above, for this Court to affirm the trial court's grant of summary judgment there must be no genuine issue as to any material fact surrounding the question of whether or not a valid assignment was made between Security Bank and Northstream. It is clear that any assignment between Security Bank and Northstream must have been in writing to satisfy the requirements of state law. Northstream argues that the assignment was made at a Security Bank Board of Director's meeting and that the minutes of that meeting constitute a memorandum evincing the assignment. However, there is *no indication in the record before us* as to whether the minutes were signed by any agent of Security Bank. There *is* an indication in the record that more documentary evidence may exist in regard to the purported assignment. It is not known if any of those documents are signed or by whom. These questions must be answered to determine whether a valid assignment has been made.

[¶ 20.] Further, it must be the intent of the parties that the transfer of rights under the assignment be a present transfer and not a mere statement of intent to transfer at a future time. Absent from the record here is any testimony as to the intent of the Board of Directors of Security Bank. There remains a factual question as to whether Security Bank's Board of Directors intended their action to be a present assignment of their interests, or a statement merely authorizing the assignment to be carried out at a later date.

[¶ 21.] The obligor of an assignment must receive notice that the assignment has occurred. The record here indicates that at some point a conversation occurred between Wald and Nordstrom regarding the 1804 loan. The record is devoid of any specific details regarding that conversation and there remains a genuine issue as to what notice Wald received from Nordstrom regarding the assignment. It should be noted that for a seven year period of time payments were made by 1804 to Northstream. This begs a question as to why 1804 made payments to Northstream for seven years if it contested the validity of the assignment. Also, there was no legal conclusion by the trial court as to what effect those payments would have had on any claim by 1804 that it had no notice of the assignment.

[¶ 22.] Finally, a review of summary judgment includes a determination as to whether the trial court correctly decided the legal questions that were laid before it. This Court has been given no record of what legal questions were addressed by the trial court or of the courts corresponding conclusions. Absent this record, it is impossible for this Court to determine if those conclusions were correct.

## CONCLUSION

[¶ 23.] There are genuine issues of material fact surrounding Northstream's alle-

gation that a valid assignment was carried out during Security Bank's liquidation process. Before the legality of the assignment may be determined, these issues of fact must be resolved by the trial court. Also, there is no record of the trial court's legal conclusions leading to summary judgment. There is no way for this Court to determine if those conclusions were correctly made. For these reasons, the trial court's grant of summary judgment in favor of 1804 is reversed and the matter is remanded for further proceedings consistent with this opinion.

[¶ 24.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP and MEIERHENRY, Justices, concur.

[¶ 25.] VON WALD, Circuit Judge, for ZINTER, Justice, disqualified.