#23936-a-JKK

**2006 SD 90**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

TIMOTHY MASTELLER AND
RONNA MASTELLER, INDIVIDUALLY
AND AS GUARDIAN AD LITEM FOR
S.R.S. AND J.R.E.S., MINOR CHILDREN,    Plaintiffs and Appellees,

    v.

CHAMPION HOME BUILDERS, CO.
and ISEMAN CORP.,                       Defendants and Appellants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE MAX A. GORS
Judge

\* \* \* \*

CHRISTINA L. FISCHER of
May, Adam, Gerdes & Thompson LLP        Attorneys for plaintiffs
Pierre, South Dakota                    and appellees.

ROBERT C. RITER, JR. of
Riter, Rogers, Wattier & Brown LLP      Attorneys for defendants
Pierre, South Dakota                    and appellants.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 28, 2006

OPINION FILED **10/18/06**

#23936

KONENKAMP, Justice

[¶1.]    In this lawsuit against Champion Home Builders Company and Iseman Corporation, the circuit court ruled that an arbitration clause in Champion's warranty booklet was not enforceable. We affirm.

## Background

[¶2.]    Timothy and Ronna Masteller signed a purchase agreement with Iseman Corporation on June 13, 2004, to buy a home manufactured by Champion Homes Company. With respect to warranties, the purchase agreement provided three relevant clauses. First, at the beginning of the agreement, it stated, "Purchaser acknowledges that there is an expressed warranty provided by the manufacturer and there are no other warranties expressed or implied being given by the dealer nor is the purchase being guaranteed for any particular purpose or use." Second, in a section entitled "Additional Terms and Conditions," the agreement stated, "The structure of a new mobile or manufactured home, or other described unit are warranted assuming reasonable wear and tear for a period of one year from the date of delivery against defects in workmanship and materials by the manufacturer." Third, the agreement closed with, "THIS AGREEMENT CONTAINS THE ENTIRE UNDERSTANDING BETWEEN US AND NO OTHER REPRESENTATION OR INDUCEMENT, VERBAL OR WRITTEN, HAS BEEN MADE WHICH IS NOT SET FORTH HEREIN." Nothing in this document mentioned any existing or future arbitration clause.

[¶3.]    After installation of the home, on November 30, 2004, a representative of Iseman handed the Mastellers Champion's "Homeowner's Guide, Limited

Warranty and Arbitration Agreement." The Mastellers signed a "New Home Delivery and Inspection Walk Through Form." In this form, they were asked whether the "[f]actory & supplier warranties were received and understood." To this, they answered, "Yes." The following December, January, March, and April 2005, the Mastellers requested and received service work on their home. On all but one occasion, after the work was performed, one of the Mastellers signed a "Champion Homes Division, Service Work Order," which contained the following phrase under the signature line: "confirms acceptance and satisfaction of warranty work performed."

[¶4.] In May 2005, the Mastellers brought suit against Iseman and Champion Home Builders (defendants), asserting five causes of action related to defects that existed at the time the home was delivered, which had not been remedied by defendants.[1] Defendants moved in circuit court to compel arbitration.

[¶5.] At the hearing, defendants maintained that the Mastellers agreed to arbitrate all claims, controversies, and disputes related to both defendants. According to defendants, when the Mastellers signed the June 13, 2004 contract

---

1. The first cause of action alleges that defendants failed to seasonably cure a defect in the roof. The second cause of action asserts, "The Defendant, Champion, has breached its express warranty and warranty of habitability by failing to correct the manufacturers defects." The third claim asserts that both defendants are merchants and that by failing to cure the nonconformity in the roof, defendants have breached the implied warranty of merchantability. Fourth, they claim that "[t]here has been a failure of consideration on the part of defendants by delivering a product which was nonconforming, defective and then by failing to remedy the situation after several opportunities." Finally, the Mastellers claim that defendants, their agents or employees, have breached the duty owed to them to manufacture, deliver, and install a home free of defects.

with Iseman, they acknowledged that the manufacturer would provide an express warranty. Then, on November 30, 2004, the Mastellers received this express warranty in a document entitled, "Homeowner's Guide, Limited Warranty and Arbitration Agreement" (Homeowner's Guide). Although the Mastellers did not sign the Homeowner's Guide, defendants claimed that, by later requesting and receiving warranty work, their conduct effected the necessary assent. Further, because the Mastellers' second cause of action was for breach of Champion's express warranty, defendants asserted that the Mastellers were estopped from seeking only the benefits of an agreement, but not the burdens.

[¶6.]     In response, the Mastellers argued that the only agreement they were aware of was the June 13 contract, which did not include an arbitration clause. The June 13 contract, they claimed, contained an express warranty, which was the only warranty they "agreed to accept." Moreover, according to the Mastellers, at no time did they request warranty work from defendants. Instead, they argued that the work performed by defendants was related to its continued effort to remedy the defects that existed when the home was installed. Therefore, they insisted that defendants should not be able to unilaterally enforce the arbitration clause because they were neither informed of its existence at the time they signed the purchase agreement nor asked to sign the document purporting to bind them.

[¶7.]     At the conclusion of the hearing, the circuit court denied defendants' motion to compel arbitration. It found that "defendants delivered the [Homeowner's Guide] to the [Mastellers] but that there was no meeting of the minds between [the parties] regarding the said document." Because there was not a meeting of the

minds, the court held that the Homeowner's Guide did "not constitute a valid or enforceable contract."

[¶8.] Defendants appeal, claiming that the circuit court erred when it did not compel arbitration because (a) a written arbitration agreement does not require a party's signature to be binding, and (b) by requesting and receiving warranty work, the Mastellers are bound by the arbitration clause in Champion's Homeowner's Guide.

## Standard of Review

[¶9.] The validity of an arbitration agreement is a mixed question of law and fact. First Options of Chicago, Inc. v. Kaplan, 514 US 938, 947-48, 115 SCt 1920, 1926, 131 LEd2d 985, 996 (1995). Therefore, we review de novo the circuit court's interpretation of an arbitration agreement. *See* Flandreau Public School Dist. No. 50-3 v. G.A. Johnson Const., Inc., 2005 SD 87, ¶7, 701 NW2d 430, 434 (citing *First Options*, 514 US at 947-48, 115 SCt at 1926, 131 LEd2d at 996). A circuit court's factual findings supporting its decision, however, are reviewed under the clearly erroneous standard of review. Dominium Austin Partners, L.L.C. v. Emerson, 248 F3d 720, 727 (8thCir 2001) (citing PCS Nitrogen Fertilizer, L.P. v. The Christy Refractories, L.L.C., 225 F3d 974, 978 (8thCir 2000)); *see also First Options*, 514 US at 947-48, 115 SCt at 1926, 131 LEd2d at 996; Lyster v. Ryan's Family Steak Houses, Inc., 239 F3d 943, 945 (8thCir 2001).

## Analysis and Decision

[¶10.] This case presents the question whether an arbitration agreement neither signed by the parties upon whom it is sought to be enforced, nor accepted

through written acknowledgement or oral agreement, may still be enforceable by acceptance through conduct. Defendants argue that the arbitration agreement was accepted when the Mastellers assented to it by requesting and receiving the benefits (warranty work) of the agreement containing the arbitration clause.

[¶11.] The Federal Arbitration Act provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 USC § 2; *see also* SDCL 21-25A-1. While arbitration agreements are favored, they are "a matter of consent, not coercion[.]" Volt Info. Sciences, Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ., 489 US 468, 479, 109 SCt 1248, 1256, 103 LEd2d 488 (1989). Therefore, the law requires that there be a valid agreement to arbitrate before parties will be compelled to arbitrate a dispute. Dinsmore v. Piper Jaffray, Inc., 1999 SD 56, ¶11, 593 NW2d 41, 44. When examining whether a party is bound by an arbitration agreement, we apply South Dakota contract law. *Id.* (citing *First Options*, 514 US at 943, 115 SCt at 1924, 131 LEd2d at 993; Houlihan v. Offerman & Co., Inc., 31 F3d 692, 694-95 (8thCir 1994)).

[¶12.] The Mastellers contend that there was no meeting of the minds on the provisions of the Homeowner's Guide. They claim that the only agreement and warranties they accepted were those provided through the June 13, 2004 contract. Therefore, they insist that the arbitration agreement lacks mutual assent and is unenforceable under SDCL 53-3-3. Defendants, on the other hand, contend that the

June 13, 2004 contract did not give the Mastellers a warranty, but instead informed them that a "warranty would be provided." Then, defendants argue, because the actual warranty was provided on November 30, 2004, in the Homeowner's Guide, and the Mastellers requested and accepted warranty work, the arbitration agreement should be enforced.

[¶13.]     It is undisputed that the June 13, 2004 contract did not contain an arbitration agreement or indicate that one was forthcoming. It declares that "Purchaser acknowledges that *there is* an express warranty provided by manufacturer." (Emphasis added). On the second page of the contract, a warranty statement is expressly included: "[t]he structure of a new mobile or manufactured home, or other described unit are warranted, assuming reasonable wear and tear, for a period of one year from the date of delivery against defects in workmanship and materials by the manufacturer." Therefore, defendants' contention that the Mastellers knew or should have known a manufacturer's warranty would be provided in the future is problematic. Still, even if a later warranty document should have been anticipated, nothing in the contract they signed portended an arbitration clause. Parties cannot be bound to contracts they never agreed to accept. SDCL 53-3-3. The Mastellers only expressly agreed to accept the terms and conditions of the June 13, 2004 contract. The fact that defendants later provided them with a warranty document containing an arbitration clause cannot bind the Mastellers to arbitrate their claims. When they received the Homeowner's Guide, they only acknowledged that the "[f]actory and supplier warranties were received and understood."

[¶14.] Defendants argue that because the Mastellers' second cause of action alludes to a one year express warranty provided by Champion Homes, the Mastellers cannot sue to enforce the benefits of a contract without also incurring its burdens. The Mastellers' second cause of action states: "The Defendant, Champion, issued a one year express warranty for the repair of manufacturers [sic] defects. . . . The Defendant, Champion, has breached its expressed warranty and warranty of habitability by failing to correct the manufacturers [sic] defects." Defendants argue that the Mastellers are "bound by all the provisions of the warranty they seek to enforce, including the arbitration provision." (Emphasis in original). From our reading of the complaint, it is unclear whether this allegation specifically seeks to enforce the warranty provided in the Homeowner's Guide or the warranty in the June 13, 2004 contract. No other contention in the Mastellers' complaint specifically relies on or identifies the warranty from the Homeowner's Guide. In their appellate brief, however, the Mastellers claim to seek only enforcement of the one year express warranty provided in the June 13 contract. Although Champion was not a signatory, this contract identifies Champion as the manufacturer and states that the manufacturer expressly warrants the home "against defects in workmanship and materials[.]" Simply because the Mastellers' second cause of action alleges a breach of Champion's "one year express warranty," we cannot conclude that they are seeking enforcement of the warranty provided in the Homeowner's Guide.

[¶15.] On the other hand, it is undisputed that after the Mastellers received the Homeowner's Guide defendants worked on their home on several occasions.

Although the Mastellers did not sign any document assenting to the warranty or arbitration language, they did sign multiple documents entitled "Champion Homes Division Service Work Order," confirming that they accepted and were satisfied with the warranty work provided. "An offeree that takes the benefit of services offered is bound by the terms of the offer if the offeree had a reasonable opportunity to reject them." E. Allan Farnsworth, *Contracts* § 3.15, 156 (2d ed 1990). A South Dakota statute reinforces this point. SDCL 53-3-5 ("voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations"). With respect to arbitration agreements in manufactured home sales, other states have concluded that when homebuyers accept the warranties, they also accept the accompanying arbitration provisions. For example, in *Southern Energy Homes, Inc. v. Ard*, 772 So2d 1131, 1134 (Ala 2000), the Alabama Supreme Court held that by accepting the benefits of the warranty containing an arbitration clause, that acceptance also constituted "acceptance of the arbitration provisions themselves." *See also* Stinson v. America's Home Place, Inc., 108 FSupp2d 1278, 1283 (MDAla 2000).

[¶16.]	Yet, while unequivocal conduct can certainly establish the necessary consent to be bound by the terms of a contract, there was no such conduct here. According to their appellate brief, the only warranty claim the Mastellers make against defendants is in regard to the June 13 contract.[2] That contract provides that the "manufactured home . . . [is] warranted assuming reasonable wear and tear

---

2.	Whether the manufacturer will be bound by this agreement when it was not a signatory is a question we do not reach.

for a period of one year from the date of delivery against defects in workmanship and materials by the manufacturer." Nothing in the service work orders the Mastellers signed indicates whether the warranty work was provided through the June 13 contract or the Homeowner's Guide. Thus, there was no unambiguous conduct evincing acceptance of the benefits of the Homeowner's Guide with its mandatory arbitration clause. In the end, the only contract the Mastellers signed and now seek to enforce was the June 13, 2004 agreement.[3] The circuit court properly concluded that there was no mutual assent with respect to the Homeowner's Guide, Limited Warranty and Arbitration Agreement.

[¶17.]     Affirmed.

[¶18.]     GILBERTSON, Chief Justice, and SABERS, ZINTER and MEIERHENRY, Justices, concur.

---

3.     Defendants cite *In re Palm Harbor Homes, Inc*., 195 SW3d 672 (Tex 2006). In that case, the buyers and the retailer signed the arbitration agreement but the manufacturer did not. When the buyers sought to avoid arbitration, the court held that the arbitration agreement was binding on both the buyers and the manufacturer. Here, however, neither party signed an arbitration agreement.