IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-925

Filed: 3 November 2020

Durham County, No. 16 CVS 5190

IRIS POUNDS, CARLTON MILLER, VILAYUAN SAYAPHET-TYLER, and RHONDA HALL, on behalf of themselves and all others similarly situated, Plaintiffs

v.

PORTFOLIO RECOVERY ASSOCIATES, LLC, Defendant

Appeal by Defendant from Order entered 21 March 2019 by Judge Michael O'Foghludha in Durham County Superior Court. Heard in the Court of Appeals 14 April 2020.

> *North Carolina Justice Center, by Jason A. Pikler, Carlene McNulty, and Emily P. Turner, J. Jerome Hartzell, Collum & Perry, PLCC, by Travis E. Collum, Lapas Law Offices, PLLC, by Adrian M. Lapas, for plaintiffs-appellees.*
>
> *Ellis & Winters LLP, by Jonathan A. Berkelhammer, Joseph D. Hammond, Michelle A. Liguori, and Carson Lane, for defendant-appellant.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Portfolio Recovery Associates, LLC, (PRA) appeals from an Order denying PRA's Motion to Compel Arbitration (Order) entered on 21 March 2019. The Record reflects the following relevant facts:

PRA is in the business of purchasing delinquent consumer debt, and since 1 October 2009, PRA has filed over 1,000 lawsuits seeking enforcements of those debts

in North Carolina courts.[1]  Specific to this case, PRA purchased the debts of Iris Pounds, Carlton Miller, Vilayuan Sayaphet-Tyler, and Rhonda Hall (collectively, Plaintiffs) pursuant to a credit sale.  PRA then filed individual lawsuits in various North Carolina courts against each Plaintiff and obtained default judgments in each of those actions against each Plaintiff on the debts.

On 21 November 2016, Plaintiffs[2] initiated this case by filing a "Class Action Complaint" (Complaint) against PRA alleging the default judgments obtained by PRA in North Carolina courts against both the named Plaintiffs and the proposed plaintiff class violated North Carolina's Consumer Economic Protection Act.  Plaintiffs sought class action certification for the proposed class of "all persons against whom PRA obtained a default judgment entered by a North Carolina court in a case filed on or after October 1, 2009."  Plaintiffs alleged the default judgments PRA obtained violated the Consumer Economic Protection Act, in part located at N.C. Gen. Stat. § 58-70-155, because PRA did not comply with certain statutorily enumerated prerequisites to obtain default judgments.  Plaintiffs sought vacatur of the default judgments, statutory penalties pursuant to N.C. Gen. Stat. § 58-70-130(b), and recovery of amounts paid to PRA after entry of the default judgments.  Plaintiffs contemporaneously filed a Motion for Preliminary Injunction seeking to bar PRA from

---

[1] Facts alleged by Plaintiffs and admitted by PRA.

[2] Pia Townes was originally a named party in this action; however, the judgment against Townes was since vacated by the Mecklenburg County District Court on 8 June 2016.

"enforcing or collecting on the default judgments . . . pending a final judgment by [the court] as to whether PRA's default judgments are void."

On 9 December 2016, PRA removed the case to the United States District Court for the Middle District of North Carolina on the basis of diversity jurisdiction under the Class Action Fairness Act of 2005. Plaintiffs moved for remand, arguing the federal district court lacked jurisdiction under the *Rooker-Feldman* doctrine, which limits the jurisdiction of federal courts to review valid state court judgments. On 28 March 2018, the federal district court entered a written Order concluding it lacked jurisdiction over Plaintiffs Pounds, Miller, Sayaphet-Tyler, and Hall, and thereby granted, in part, Plaintiffs' Motion to Remand. The federal district court remanded the case to Durham County Superior Court.[3]

On 31 May 2018, PRA responded to Plaintiffs' Complaint with its "Notice of Election to Arbitrate, Answer, and Counterclaims." On 29 June 2018, PRA filed an amended pleading captioned "Notice of Election to Arbitrate, Amended Answer, and Counterclaims." On or about 28 September 2018, the case was designated as an "exceptional case" pursuant to Rule 2.1 of North Carolina's General Rules of Practice and assigned to Superior Court Judge Michael O'Foghludha.

On 22 October 2018, Plaintiffs filed a Motion for Judgment on the Pleadings. On 11 January 2019, PRA moved to compel arbitration pursuant to the Federal

---

[3] Because Plaintiff Townes's default judgment had been vacated, the federal district court determined it had jurisdiction over her claim.

Arbitration Act (FAA). In its supporting brief, PRA argued each of the arbitration agreements at issue was enforceable against the respective Plaintiff, and therefore the trial court should dismiss Plaintiffs' claims and, instead, compel arbitration. In opposition, Plaintiffs asserted PRA failed to meet its burden of demonstrating the existence of a valid, binding arbitration agreement as between Plaintiffs and PRA.

On 21 March 2019, the trial court entered its Order denying PRA's Motion to Compel Arbitration. In relevant part, the Order provided:

> 49. [T]he Court therefore finds that each Plaintiff entered into a credit card agreement with Synchrony that requires arbitration of disputes with Synchrony/GE, and that [Plaintiff] Sayaphet-Tyler also entered into a credit card agreement with Citibank that requires arbitration of disputes with Citibank.
>
>     . . . .
>
> 54. . . . The Court concludes based on the findings of the Court and the evidence presented that a valid contract or option to arbitrate was entered into between [P]laintiffs and the original creditors, at least as such relates to disputes between the [P]laintiffs and the original creditors.
>
> 55. Likewise, in this case, a second "necessarily antecedent statutory inquiry" is whether PRA has been assigned the rights created in the purported arbitration agreements and any delegation clauses contained therein. *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019) (noting that the Court must always complete a "necessarily antecedent statutory inquiry").
>
>     . . . .
>
> 59. The Court further concludes that PRA, as a nonsignatory to the credit card agreement, has not proven it was assigned the right to arbitrate the current dispute in this case.

60. The question of whether PRA was assigned the right to enforce these agreements is governed by the choice of law provisions in each agreement. Accordingly, in assessing whether PRA can enforce the arbitration agreements, the Court applies Utah law to all the GE Bank agreements and South Dakota law to the Citibank agreement.

. . . .

65. This Court will interpret the Bills of Sale—as the available portion of the agreements between the original creditors and PRA—to determine if the parties manifested an intent to transfer the right to compel arbitration to PRA.

66. . . . The Bills of Sale state an intent to transfer to PRA either "the Receivables as set forth in the Notification Files (as defined in the [purchase] Agreement)" (for the GE Bank bills of sale) or "the Accounts described in Exhibit 1 and the final electronic file" for the Citibank bill of sale. Neither term is defined in the agreements.

. . . .

69. In the case of these [P]laintiffs, only the Hall credit agreement with GE and the Sayaphet-Tyler credit agreement with Citibank specifically grant assignees of the agreement the right to enforce the arbitration clause of the agreement. The Court concludes as a matter of law that the Pounds, Miller, and Sayaphet-Tyler GE agreements do not grant assignees of those agreements the right to enforce arbitration, as the mere sale and transfer of the receivable (the debt) to PRA did not transfer the right to arbitrate.

70. As to the Hall GE agreement, that agreement did specifically give the right to enforce the arbitration clause to assignees of the account. However, the Bill of Sale to PRA only sold and transferred the debt (the receivable) to PRA, not all of the rights and obligations of the original agreement. The Court concludes as a matter of law that the mere sale and transfer of the Hall receivable (the debt) did not transfer the right to arbitrate.

71. Although the language of the Sayaphet-Tyler Citibank Bill of Sale is broader than the Bills of Sale of the GE accounts, (the account is transferred, not merely the receivable), the Bill of Sale does not clearly indicate an intent to transfer the right to arbitrate any dispute, or indeed all of the rights and obligations of the original agreement. The Court concludes that the transfer of the account does not necessarily transfer the right to arbitrate. If Citibank and PRA had intended to transfer all of the rights and obligations of the original agreement, those parties could have taken care to so indicate in the agreement. The fact that they did not means th[at] PRA has not met its burden of showing that the plaintiffs in this case must arbitrate the current dispute(s).

. . . .

74. Given its conclusions in the foregoing paragraphs, and in consideration of the applicable state and federal law, the Court concludes that PRA is not a party entitled to enforce any arbitration agreement regarding any current Plaintiff in this case.

PRA timely filed Notice of Appeal from the trial court's Order on 2 April 2019.

## Issue

The issue before this Court on appeal is whether the trial court erred in denying PRA's Motion to Compel Arbitration. This issue turns on the question of whether there was a valid arbitration agreement between Plaintiffs and PRA, which, in turn, hinges on whether PRA was assigned the right to arbitrate pursuant to the Bills of Sale.

## Analysis

### I. Appellate Jurisdiction and Standard of Review

Although "an appeal from the trial court's denial of a motion to compel arbitration is an interlocutory order[,]" *U.S. Trust Co., N.A. v. Stanford Grp. Co.*, 199 N.C. App. 287, 289, 681 S.E.2d 512, 513 (2009) (citation omitted), it is "well established that an order denying a motion to compel arbitration is immediately appealable." *Cornelius v. Lipscomb*, 224 N.C. App. 14, 16, 734 S.E.2d 870, 871 (2012).

> (a) On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement:
>
> . . . .
>
> (2)     If the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.

N.C. Gen. Stat. § 1-569.7(a)(2) (2019).

This Court has elaborated "the trial court must perform a two-step analysis requiring the trial court to ascertain both (1) whether the parties had a valid agreement to arbitrate, and also (2) whether the specific dispute falls within the substantive scope of that agreement." *U.S. Trust Co., N.A.*, 199 N.C. App. at 290, 681 S.E.2d at 514 (citations and quotation marks omitted). "[T]he trial court's findings regarding the existence of an arbitration agreement are conclusive on appeal where supported by competent evidence, even where the evidence might have supported findings to the contrary." *Ellis-Don Constr., Inc. v. HNTB Corp.*, 169 N.C. App. 630, 633-34, 610 S.E.2d 293, 296 (2005) (citations and quotation marks omitted). We

review the trial court's conclusions of law de novo. *Hager v. Smithfield E. Health Holdings, LLC*, 264 N.C. App. 350, 354-55, 826 S.E.2d 567, 571 (2019) (citing *Creed v. Smith*, 222 N.C. App. 330, 333, 732 S.E.2d 162, 164 (2012)).

## II. Arbitration Agreement Between the Parties

Here, the parties do not dispute the trial court's determination there was a valid arbitration agreement between Plaintiffs and the original creditors as established in each Plaintiff's credit card agreement. At issue is the trial court's conclusion there was not a valid arbitration agreement between Plaintiffs and PRA on the basis PRA was not assigned arbitration rights when it purchased Plaintiffs' debts through the Bills of Sale. PRA contends the trial court's conclusion erred as a matter of law for several reasons. In broad strokes, PRA argues the trial court "misapplied basic contract law," "singled out arbitration rights for special, discriminatory treatment and resolved its doubts against the transfer of arbitration rights—both in violation of the FAA." PRA specifically contends it was entitled to arbitration under the express language in Plaintiff Hall's GE Bank Credit Card Agreement and Plaintiff Sayaphet-Tyler's Citibank Credit Card Agreement, and, further, the assignment of Plaintiffs' Accounts and Receivables, as effectuated by the Bills of Sale, necessarily or implicitly included the assignment of the right to arbitrate.

The United States Supreme Court has instructed "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530, 202 L. Ed. 2d 480, 487 (2019) (citation omitted). "[A] litigant who was not a party to the relevant arbitration agreement may invoke [Section] 3 [of the FAA] if the *relevant state contract law* allows him to enforce the agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632, 173 L. Ed. 2d 832, 841 (2009) (emphasis added). Therefore, as an initial matter and contrary to PRA's assertion, the trial court did not "misapply basic contract law" when it examined the relevant state contract law to instruct its analysis as to whether Plaintiffs and PRA had binding arbitration agreements. Thus, we must examine, as did the trial court, the "relevant state contract law" to determine if PRA is entitled to enforce the arbitration agreements contained in Plaintiffs' original credit card agreements against Plaintiffs. *See id.*

The parties agree with the trial court the relevant state contract law is the law of Utah for the GE Bank Agreements and South Dakota for the Citibank Agreement. Both Utah and South Dakota require proof of a valid arbitration agreement between parties before compelling arbitration. *Bybee v. Abdulla*, 2008 UT 35, ¶ 26, 189 P.3d 40, 47 (2008); *Mastellar v. Champion Home Builders Co.*, 2006 SD 90, ¶ 11, 723 N.W.2d 561, 564 (2006). Moreover, the party seeking to compel arbitration bears the burden of proving there is a valid arbitration agreement between the parties. *E.g.,*

*McCoy v. Blue Cross and Blue Shield of Utah*, 2001 UT 31, ¶ 11, 20 P.3d 901, 904 (2001).

As such, whether a valid arbitration agreement exists under the applicable state law turns on whether PRA was assigned the right to arbitrate.

> Generally, the elements of an effective assignment include a sufficient description of the subject matter to render it capable of identification, and delivery of the subject matter, with the intent to make an immediate and complete transfer of all right, title, and interest in and to the subject matter to the assignee.

*Gables v. Castlewood-Sterling*, 2018 UT 04, ¶ 38, 417 P.3d 95, 107 (2018) (citations and quotation marks omitted).  Likewise:

> It is the substance of the assignment rather than the form that is evaluated.  Regardless of how it is made, an assignment must contain clear evidence of the intent to transfer rights, must describe the subject matter of the assignment, and must be noticed to the obligor.

*Northstream Investments, Inc. v. 1804 Country Store Co.*, 2005 SD 61, ¶ 15, 697 N.W.2d 762, 766 (2005).

For purposes of this appeal, PRA became an assignee when it purchased Plaintiffs' debts; thus, here, the Bills of Sale are the operative assignment agreements.  The GE Bills of Sale, which cover four of five the assignments at issue in the present case, provide:

> Seller hereby transfers, sells, conveys, grants, and delivers to Buyer, its successors and assigns, without recourse except as set forth in the Agreement, to the extent of its ownership, the *Receivables* as set forth in the Notification Files (as defined in the

> Agreement), delivered by Seller to Buyer . . . and as a further
> described in the Agreement.

(emphasis added). The Citibank Bill of Sale states: "Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the *Accounts* described in Exhibit 1 and the final electronic file." (emphasis added). Although the language of the GE Bills of Sale indicates the Receivables are "as set forth in the Notification Files (as defined in the Agreement)" and the Citibank Bill of Sale reflects the Accounts are "described in Exhibit 1 and the final electronic file" no such documents or files describing Plaintiffs' Accounts and Receivables are included in the Record.

Therefore, the pivotal question for this Court is *what* rights were assigned to PRA when it purchased Plaintiffs' Accounts and Receivables pursuant to the Bills of Sale. The trial court concluded, examining the relevant laws of Utah and South Dakota, the language of the Bills of Sale, and both parties' supporting arguments and briefs, the right to arbitrate Plaintiffs' claims was not included in the assignment of Plaintiffs' Receivables and Accounts. PRA contends the trial court's conclusion was error, arguing "numerous courts have held that an assign may enforce an arbitration agreement that is expressly enforceable by assigns, without requiring evidence that the assignors' arbitration rights transferred." In particular, PRA argues it was *expressly* assigned the right to arbitrate by Plaintiff Hall's GE Bank Agreement and Plaintiff Sayaphet-Tyler's Citibank Agreement and, further, that PRA was assigned

the right to arbitrate all Plaintiffs' claims because the Bills of Sale assigned PRA all of the rights granted to the original creditors.

PRA first singles out Plaintiff Hall's GE Bank Agreement and Plaintiff Sayaphet-Tyler's Citibank Agreement and contends they were enforceable by PRA because the language of the two agreements themselves stated they were expressly enforceable by assigns. This is consistent with the trial court's Order, which found "only the Hall credit agreement with GE and the Sayaphet-Tyler credit agreement with Citibank specifically grant assignees of the agreement the right to enforce the arbitration clause of the agreement." However, PRA's argument the trial court's analysis should have concluded there is misplaced. Just because the original credit card agreements expressly contemplated that a future assignee may be assigned the right to compel arbitration does not relieve the future assignee from having to prove there was, in fact, an assignment of that right. Accordingly, as the trial court also recognized, the analysis for Plaintiff Sayaphet-Tyler's GE Bank Agreement and Plaintiff Hall's Citibank Agreement is the same as for the additional Plaintiffs; we turn to the language of the Bills of Sale themselves to determine what rights the original creditors assigned to PRA. PRA contends even if the Bills of Sale did not expressly assign the right to arbitration, the original creditors' right to arbitration was implicitly or necessarily assigned as part of the assignment of Plaintiffs' Accounts and Receivables.

Utah and South Dakota law both require express intent to assign identified rights or subject matter. Indeed, the Supreme Court of Utah explained, "the elements of an effective assignment include[,]" *inter alia*, "a sufficient description of the subject matter to render it capable of identification" and "the intent to make an immediate and complete transfer of all right, title, and interest in and to the subject matter to the assignee." *Gables*, 2018 UT 04 at ¶ 38, 417 P.3d at 107 (citation and quotation marks omitted). Similarly, the South Dakota Supreme Court reiterated "an assignment must contain clear evidence of the intent to transfer rights [and] must describe the subject matter of the assignment[.]" *Northstream Investments, Inc.*, 2005 SD 61 at ¶ 15, 697 N.W.2d at 766.

A number of courts around the country—including some applying Utah and South Dakota law—have considered whether an assignment of debt necessarily or implicitly carries with it an assignment of the right to compel arbitration. Instructive is the United States District Court for the Northern District of Alabama's decision in *Lester v. Portfolio Recovery Assocs., LLC*, No. 1:18-CV-0267-VEH, 2018 WL 3374107 (N.D. Ala. 2018). The plaintiff in *Lester* defaulted on credit card debt originally owned by GE Bank (later Synchrony), who subsequently sold the debt to PRA. *Id.* at *2. The plaintiff's cardholder agreement included an arbitration provision and identified the FAA and Utah law as the relevant state law. *Id.* The *Lester* court considered an almost-identical question to the case at hand. In determining if PRA could compel

arbitration on the plaintiff's claims, the *Lester* court examined the bill of sale,[4] which stated:

> Seller hereby transfers, sells, conveys, grants, and delivers to Buyer, its successors and assigns, without recourse except as set forth in the Agreement, to the extent of its ownership, *the Receivables* as set forth in the Notification Files (as defined in the Agreement), delivered by Seller to Buyer on [date], and as further described in the Agreement.

*Id.* The *Lester* court determined, applying the relevant Utah law, the defendant had not demonstrated the right to compel arbitration was included in the purchase of the plaintiff's debt as effectuated through the bill of sale and thus the original creditor "only transferred to PRA the right to collect Lester's receivable." *Id.* at *7.

PRA cites, *inter alia, Brooks v. N.A.R., Inc.,* No. 3:18-cv-362, 2019 WL 2210766 (N.D. Ohio 2019), for the proposition "numerous courts have held that an assign may enforce an arbitration agreement that is expressly enforceable by assigns without requiring evidence that the assignors' arbitration rights transferred." Notably in *Brooks*, however, the federal district court determined "[a]long with the account itself, Crest *also assigned N.A.R. all of its rights.*" *Id.* at *1. (emphasis added). The *Brooks* court, therefore, consistent with the trial court in the case *sub judice*, looked at the document effectuating the assignment to see what rights were assigned to the defendant. Although the assignment in *Brooks* did not expressly identify assignment

---

[4] This language is identical to the language of the GE Bills of Sale at issue in the case *sub judice*, save for the language relating to the date of the specific transaction.

of the specific right to arbitration, the assignment included the plaintiff's account and "all of [the original creditors] rights." *Id.* Thus, the assignment at issue in *Brooks* was more inclusive than the assignments in the present case that do not include such similar, additional catch-all language.

We are persuaded by the federal district court's reasoning in *Lester*. As detailed, Utah and South Dakota look for both the identification of and the intent to transfer rights to an assignee. *See Gables*, 2018 UT 04 at ¶ 38, 417 P.3d at 107; *Northstream Investments, Inc.*, 2005 SD 61 at ¶ 15, 697 N.W.2d at 766. Here, PRA purchased Plaintiffs' debts pursuant to the Bills of Sale, which specifically and solely identify the assignment of Plaintiffs' Accounts and Receivables. The Bills of Sale in this case contrast with the language of other bills of sale or purchase agreements where the documents effectuating the assignments expressly assign *all of the rights* of the original creditors to the assignee. *See Brooks*, No. 3:18-cv-362, 2019 WL 2210766, at *1 ("Along with the account itself, [original creditor] also assigned [the defendant] *all of its rights*." (emphasis added)); *James v. Portfolio Recovery Assocs., LLC*, No. 14-cv-03889-RMW, 2015 WL 720195, at *5 (N.D. Cal. 2015) ("[U]nder the express terms of the agreement, the assignment of the agreement to PRA affords PRA 'the same rights' as [original creditor] had under the agreement."); *Mark v. Portfolio Recovery Assocs., LLC*, No. 14-cv-5844, 2015 WL 1910527, at *3 (N.D. Ill. 2015) (where the "Bill of Sale and Assignment of Assets unambiguously assigns 'all of [its]

right, title and interest in and to' the accounts purchased by PRA[,]" the federal district court concluded "[t]he plain and ordinary meaning of 'all of [its] right, title, and interest in and to' provides for an assignment of all of [original creditor's] rights under the Cardmember Agreement, including the arbitration provision"). Thus, we conclude the language contained in Plaintiffs' Bills of Sale does not identify the assignment of the right to arbitration nor does it demonstrate an intent of the parties to assign PRA "all of the rights" of the original creditors. Without more, the right to arbitrate against Plaintiffs was not implicitly assigned along with Plaintiffs' Accounts or Receivables.

PRA also argues Section 9-404(a) of the Uniform Commercial Code, which has been adopted in both Utah and South Dakota, applies and compels the conclusion PRA was entitled to arbitration. Section 9-404, in part, provides:

> (a) Unless an account debtor has made an enforceable agreement not to assert defenses or claims, and subject to subsections (b) through (e), the rights of an assignee are subject to:
>
> (1) All terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract; and
>
> (2) Any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee.

S.D. Codified Laws § 57A-9-404(a) (2019); Utah Code Ann. § 70A-9a-404(1) (2019). PRA contends it was transferred the right to compel arbitration under this statutory

provision because its own rights under the assignment from the original creditors, under the UCC, are made subject to the same terms of the Plaintiffs' original credit card agreements.

Although the applicability of Section 9-404 under either Utah or South Dakota law to the present case is not extensively briefed before us, as an initial matter, the applicability of Section 9-404 to the present case is at least questionable. Indeed, Subsection (c) of Section 9-404 as adopted by both states provides: "This section is subject to law other than this article which establishes a different rule for an account debtor who is an individual and who incurred the obligation primarily for personal, family, or household purposes." S.D. Codified Laws § 57A-9-404(c); Utah Code Ann. § 70A-9a-404(3).

Moreover, it appears PRA's argument on this point is contrary to the purpose of Section 9-404. The purpose of Section 9-404(a) is to define and limit the defenses and claims that may be asserted against an assignee by an account debtor, including by preserving any claims or defenses an account debtor may assert under the terms of the original agreement against an assignee. *See, e.g.*, S.D. Codified Laws § 57A-9-404 cmt. 3. Nowhere in this Section does it mandate the terms of every assignment—no matter the express terms of the actual assignment—from the original debtor to an assignee.

Indeed, even assuming PRA's reading of this Section is correct and Section 9-404(a) is designed to be a broad grant of rights under an assignment to the assignee and is applicable to agreements like the one in this case, the UCC also recognizes parties have the right to vary its terms by agreement. *See* Utah Code § 70A-1a-302(1) ("Except as otherwise provided . . . the effect of provisions of this title may be varied by agreement"); S.D. Codified Laws § 57A-1-302(a) (same); *see also Pine Top Receivables of Ill., LLC v. Banco de Seguros del Estado*, 771 F.3d 980, 992 (7th Cir. 2014) ("The provisions of the UCC on which [the plaintiff] relies cover contractual language assigning 'the contract' or 'all my rights under the contract.' If an assignment includes such language, the UCC tells us that the transfer is subject to 'all terms of the agreement.'" (citing 810 ILCS 5/9-404(a))).

However, as Plaintiffs argue and we have discussed *supra*, the very terms of the Bills of Sale at issue in the present case contractually limit the scope of the assignments—they assign PRA *only* Plaintiffs' Accounts and Receivables. As such, application of Section 9-404 does not alter our analysis. Therefore, consistent with both Utah and South Dakota law, the key inquiry remains unchanged: Whether the right to arbitrate was included in the assignment of Plaintiffs' Accounts and Receivables as effectuated by the Bills of Sale. The trial court properly concluded under the laws of South Dakota and Utah and based on the terms of the Bills of Sale

themselves, the right to arbitrate was not transferred by implication or by necessity along with the Accounts and Receivables.

Consequently, we conclude, as did the trial court, without any showing of the additional intent by the original creditors to assign to PRA, at the very least, "all of the rights and obligations" of the original agreements, the right to arbitrate was not assigned in the sale and assignment of the Plaintiffs' Accounts and Receivables as set forth in the Bills of Sale. The trial court correctly concluded PRA has not met its burden of showing a valid arbitration agreement between each Plaintiff and PRA and did not err when it denied PRA's Motion to Compel Arbitration.

## **Conclusion**

Accordingly, for the foregoing reasons, the trial court's Order is affirmed.

AFFIRMED.

Judges STROUD and ARROWOOD concur.