STATE HIGHWAY COMMISSION, Respondent

v.

SWEETMAN CONSTRUCTION COMPANY, Appellant

(153 N.W.2d 682)

(File No. 10352.  Opinion filed October 26, 1967)
Rehearing denied December 5, 1967

**John E. Burke** and **Richard Hopewell,** Sioux Falls, for appellant, Sweetman Construction Co.

**James L. Combellick** and **John B. Wehde,** Special Asst. Attys. Gen., Pierre, for respondent, State of South Dakota.

HOMEYER, Presiding Judge.

This declaratory judgment proceeding involves the construction of a highway building contract and the rights and obligations of the parties under it. We refer to the State Highway Commission as the Commission and to the Sweetman Construction Company as Sweetman. The trial court construed the contract adverse to Sweetman's contentions and this appeal followed.

In 1964 after published notice for bids on the work to be performed according to plans and specifications, the bid of Sweetman was accepted and a contract entered into for grading and other work on Interstate 90 in Minnehaha County near Sioux Falls. Sweetman claims the performance of a part of the work, i. e., undercutting for the placement of topsoil, was a pay item for which he was to be separately compensated at the rate bid for unclassified excavation. The Commission contends it was an absorbed item and included in the unit price bid for placing stockpiled topsoil.

A brief explanation of undercutting is necessary to properly understand the question presented. In the early stages of highway construction one of the first activities is to strip the topsoil from areas to be excavated and place it in stockpiles for subsequent use in newly excavated, and occasionally in filled areas to support growth of plant life and as an aid to erosion control. Occasionally it is placed in its new location directly after removal. More often it is stockpiled temporarily and as the project nears completion it is removed to areas of new construction that require it. Before the stockpiled topsoil can be placed in areas requiring a grade cut instead of a grade fill, the area to receive it must be prepared by undercutting it in an amount equal to the depth of the topsoil to be placed—usually three inches.

■ The plans and specifications are a part of the contract and it is conceded in the case of any discrepancy between the plans and the specifications, the plans will govern.

■ The plans under the heading of Salvaging and Stockpiling Topsoil provide: "Salvaging and Stockpiling of Topsoil shall be in accordance with the provisions of the revisions and supplements to the standard specifications, dated March 1961 * * * Note—The grading contractor is to undercut and/or undergrade the template sections, except roadbed, three inches to provide for the future placement of topsoil. The necessary undercutting is included in the 'Estimate of Quantities' below as 'Unclassified Excavation'." Directly above are listed 13 stations with estimated quantities of topsoil to be salvaged and stockpiled from each station totaling 146,857 cubic yards. Sweetman bid the placement of stockpiled topsoil at .40 per cubic yard.

On the same page under the heading Estimate of Quantities for Grading and Structures is a reference to "Undercutting (below cross section template lines) for later placement of salvaged topsoil" and under the column Unclassified Excavation as additional excavation appears the figure 68,293 cubic yards. Sweetman bid unclassified excavation at .251 per cubic yard.

The specifications, section 23, deal with Salvaging, Stockpiling and Placing of Topsoil. Method of measurement and basis

of payment are set forth in detail. The specifications state the price paid for removal of topsoil from its original position shall be at the contract unit price bid per cubic yard for unclassified excavation. If removal is made from stockpiles, additional payment shall be made at the contract unit price bid per cubic yard for "placing salvaged topsoil". Placing stockpiled topsoil was bid per cubic yard and is a separate contract item and was so bid by Sweetman. The specifications provide that under either method of payment, the price bid shall include in addition to many other work descriptions "necessary undercutting without separate measurement or payment." The petition in which Sweetman joined states: "According to the * * * specifications, as revised, such excavation for undercutting for the placement of topsoil is to be an absorbed item for which the contractor is not specifically paid. * * *" The president of Sweetman testified this was the usual practice. One of the reasons advanced for it being an absorbed item is that it was extremely difficult to make and generally no actual measurement was made of quantities involved in undercutting. Nor was it made in this case. We believe the specifications allow no reasonable construction except that undercutting for placement of stockpiled topsoil is intended as an absorbed item to be included in the unit price bid for placement of stockpiled topsoil.

The plans do not change this method of payment. The note supra contained in the plans does not provide that it should be a separate pay item. Just to the left of the note appears a provision for Roadbed Undercutting for gravel subbase, the amounts, and this is shown in the plans as "unclassified excavation". To show how such undercutting is to be paid for the plans specifically state: "In lieu of absorbing payment for this 'undercutting' as shown in the specifications, this work will be paid for as 'unclassified excavation' in accordance with the quantities shown on the chart above which are included in the totals of 'unclassified excavation' in the estimate of quantities below." This language is clear and explicit and supersedes the method of making payment set forth in the specifications. By omitting the language above from the note on undercutting for placement of topsoil, it is equally clear the method of compensation was controlled by the specifications and an absorbed item.

In our opinion the reference in the Note and the inclusion of an amount for undercutting for later placement of topsoil as unclassified excavation with estimated quantities does not make the amount shown a separate pay item. Rather we are inclined to agree with respondent that its purpose was to inform prospective bidders of the approximate quantity of undercutting to be absorbed and to serve as a base for comparison of bids. "Estimate of Quantities" in road construction means just what it says. It is only an estimate or approximation. The specifications make it plain, and contractors know, payment is made not on estimates, but for actual quantities at unit prices bid.

We note from the record and briefs interchangeable references to undercutting as an absorbed item—sometimes in the unit price for unclassified excavation and sometimes in the unit price for placement of stockpiled topsoil. As stated, we believe it is an absorbed item in the unit price for placement of stockpiled topsoil. The trial court found it to be an absorbed item and we concur in such construction of the contract.

■ Sweetman calls attention to various provisions in the specifications which he contends lend themselves to a construction justifying his position. This is contrary to his petition and position in the trial court. Generally, a case on appeal will be considered only upon the theory upon which it was tried below. Berry v. Benner, 81 S.D. 610, 139 N.W.2d 285. Nonetheless, we have examined the portions of the specifications argued by Sweetman in its briefs and are satisfied none if properly presented would persuade either the trial court or this court to a different result in this case.

■■ Before proceeding to consider this case on its merits, the court has carefully examined the procedure utilized by the parties to bring the matter before the court below and to this court on appeal. Counsel for the Commission and Sweetman filed a joint petition asking for a declaration of rights and obligations under SDC 1960 Supp. 37.01. Neither is designated as plaintiff or defendant and no other pleadings were filed and no summons issued or served. The petition sets forth a justiciable controversy, the adverse interests and contentions of the par-

ties, and is proper subject matter for a declaratory judgment. The court has jurisdiction and we treat any defects in form and procedure as waived and the proceeding as one under SDC 1960 Supp. 37.02, Submission of Stipulated Case, although not strictly in compliance with such statute. See Beresford Independent School District v. Fletcher, 66 S.D. 500, 287 N.W. 497. Apropos is the following statement found in the text, Anderson, Declaratory Judgments, § 198, p. 410, to which the attention of counsel and the Bar is directed. "In any event it is plain that the declaratory judgment statutes do not abrogate the ordinary rules of pleading, practice, procedure, and evidence. Even the most liberal construction that can be placed upon such statutes will not warrant the courts in granting affirmative relief by way of a declaraory judgment in the absence of pleading and proof warranting such relief." MacKay v. Whitaker, 116 Cal.App.2d 504, 253 P.2d 1021. See also Rule 57, South Dakota Rules of Civil Procedure, which became effective July 1, 1966, after this proceeding was initiated and the matter tried.

Judgment affirmed.

All the Judges concur.