#24003-aff & rem-SLZ

**2007 SD 10**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

CURTIS W. HANKS,                                        Plaintiff and Appellee,

   v.

CORSON COUNTY BOARD OF
COUNTY COMMISSIONERS,                          Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
CORSON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE WARREN G. JOHNSON
Judge

* * * *

ELTON R. ANSON of
Crane & Anson
Lemmon, South Dakota                               Attorneys for appellee.

THOMAS E. SIMMONS
G. VERNE GOODSELL
JONATHAN M. OOSTRA of
Gunderson, Palmer, Goodsell & Nelson
Rapid City, South Dakota                           Attorneys for appellant.

* * * *

ARGUED AUGUST 30, 2006

OPINION FILED **01/17/07**

#24003

ZINTER, Justice.

[¶1.] The Corson County Board of Commissioners (Board or County) contracted with a private attorney to provide legal services for the County. The circuit court found that some of the contemplated legal services fell within the scope of the Corson County State's Attorney's duties. To that extent, the circuit court concluded that the contract was void because it usurped the duties of an elected state's attorney. The Board appeals. We affirm and remand for modification of the judgment to conform to the circuit court's findings of fact and conclusions of law.

## Facts and Procedural History

[¶2.] Curtis W. Hanks was elected as the part-time Corson County State's Attorney in 2000. Notwithstanding this elected position, the Board contracted with Cheryl Laurenz-Bogue for certain legal services during Hanks's term of office. The January 2003 contract, the only contract at issue in this appeal, delineated the scope of the private legal services:

> In exchange for the payments set forth below, Law Firm will provide and be responsible for performing all civil representation regarding the County as may be requested, in state, federal and tribal courts, as set forth in Chpt [sic] 7-16, with the exception of appellate representation in the Federal Courts, absent a separate agreement with County. In addition to the obligations and responsibilities as set for [sic] in SDCL Chpt. [sic] 7-16, Law Firm is further obligated to: (a) be available for conferences or meetings with the Corson County Commission and individual County officers as needed; (b) be available by telephone, during normal business hours, at Law Firm's main office located in Dupree, SD, or in Faith, SD; and (c) be available to County or State law enforcement or other County officials on an emergency basis during non-business hours.

-1-

#24003

[¶3.] Hanks challenged the contract by invoking the circuit court's power of appellate review over county commission decisions under SDCL 7-8-27.[1] The circuit court initially granted Hanks appellate relief, concluding that the contract was void because it displaced the duly elected state's attorney. On appeal of that decision to this Court, we ruled that the contract was ambiguous. Therefore, we remanded the matter for a determination of "the nature of the legal services contemplated by the Board. . . ." Hanks v. Corson County Bd. Com'rs, 2005 SD 38, ¶17, 694 NW2d 698, 703 (*Hanks* I). It was also disclosed during the first appeal that Hanks held a position as a tribal judge. "Because we [were] unable to determine whether a violation of SDCL 7-16-18[2] disqualified Hanks from serving as state's attorney or had some other legal effect, [we ordered that] upon remand the circuit court should hold further proceedings to determine the legal effects of any violation of this law by Hanks." *Id*. at ¶16, 694 NW2d at 703.

[¶4.] On remand, the circuit court found that some of the contemplated legal services were within the scope of the state's attorney's duties. The Board now

---

1. SDCL 7-8-27 provides:
   From all decisions of the board of county commissioners upon matters properly before it, there may be an appeal to the circuit court by any person aggrieved upon filing a bond in the amount of two hundred fifty dollars with one or more sureties to be approved by the county auditor conditioned that the appellant shall prosecute the appeal without delay and pay all costs that he may be adjudged to pay in the circuit court. Such bond shall be executed to the county and may be sued in the name of the county upon breach of any condition therein.

2. SDCL 7-16-18 provides in part: "No state's attorney, while in office, is eligible to hold any judicial office."

appeals this finding.  With respect to the tribal judge issue, the court found that Hanks was an Associate Justice for the Standing Rock Tribe in North Dakota.  The court then considered the legal effects of that tribal position.  It concluded that it was without jurisdiction to remove Hanks from the tribal judgeship.  It also concluded that Hanks's judicial position had no effect on the legality of the contract. The Board does not contest these two conclusions.  The Board does, however, contend that the court should have entered declaratory relief indicating that Hanks was violating SDCL 7-16-18.

*Legal Effects of Hanks's Violation of SDCL 7-16-18*

[¶5.]        As previously mentioned, the Board does not appeal the circuit court's conclusions that it had no jurisdiction to remove Hanks from his judgeship and that the tribal judgeship did not affect the legality of the contract.  Hanks's judicial position could not have affected the legality of the contract under the facts of this case because the parties stipulated that "Hanks [had] not been disqualified as Corson County States [*sic*] Attorney, nor [had] the County requested Curtis W. Hanks be judicially disqualified from representing Corson County, South Dakota on civil matters."  Further, at oral argument, the Board completely removed this issue from consideration by indicating they were not defending the contract based on Hanks's apparent statutory violation:

> Court:  You're not defending the contract based on the violation; you simply want a declaration of a violation as we had . . . mentioned in our last opinion?
> Counsel:  Yes.

Therefore, under the particular facts of this case, we affirm the circuit court's first two conclusions concerning the legal effects of Hanks's judicial office.

[¶6.]     The third possible effect of Hanks's judicial office concerned his right to hold the office of state's attorney.[3]  On this issue, the Board conceded at oral argument that it could not challenge Hanks's right to hold that office in these proceedings:

> Court:  What you're asking for then is a declaration that he's violating the statute, no more no less, is that what you're asking?
> Counsel:  That's right. . .
> Court:  You're not challenging his office?
> Counsel:  We are not and we can't. . .

The Board acknowledged that it could not challenge Hanks's status as state's attorney in this county commission appeal because "quo warranto is the proper proceeding to determine title to and possession of a public office."  Burns v. Kurtenbach, 327 NW2d 636, 638 (SD 1982)(citations omitted).  *See also* State v. Jensen, 2003 SD 55, ¶10, 662 NW2d 643, 646; McElhaney v. Anderson, 1999 SD 78,

---

3.     We note that SDCL 7-16-18 governs a state's attorney's eligibility to hold a *judicial office* rather than eligibility to hold the *office of state's attorney*.  The statute provides in relevant part:  "No state's attorney, while in office, is *eligible to hold any judicial office*."  (Emphasis added.)

In contrast, SDCL 7-16-1 governs eligibility to hold the office of state's attorney.  And those eligibility requirements do not include any reference to a judicial office.  Rather, the statute provides:

> A state's attorney shall be elected in each organized county of this state at each general election, who shall qualify by taking the oath of office and giving a bond as required by law.  No person shall be eligible to the Office of State's Attorney who is not duly licensed to practice as an attorney and counselor at law by the Supreme Court of this state.

¶8, 598 NW2d 203, 205.[4] "We have departed from this rule only in instances of 'exceptional circumstances' of an emergency nature involving the public interest of the entire state or a good portion of it." Weger v. Pennington County, 534 NW2d 854, 859 (SD 1995) (citation omitted). This dispute concerning a county's decision to contract for legal services is not an exceptional circumstance of an emergency nature.

[¶7.] The Board, however, contends that the circuit court should have entered a declaratory ruling that Hanks was violating SDCL 7-16-18. The Board asserts that the failure to enter a declaratory ruling violated our mandate in *Hanks I*. However, this case involves an appeal from a county commissioner decision, and

---

4. SDCL 21-28-2 is an additional remedy to determine whether a public officer's act requires the forfeiture of office. That statute provides:

> An action may be brought by any state's attorney in the name of the state, upon his own information or upon the complaint of a private party, or an action may be brought by any person who has a special interest in the action, on leave granted by the circuit court or judge thereof, against the party offending in the following cases:
> (1) When any person shall usurp, intrude into, or unlawfully hold or exercise any public office, civil or military, or any franchise within this state, or any office in a corporation created by the authority of this state;
> (2) When any public officer, civil or military, shall have done or suffered an act which, by the provisions of law, shall make a forfeiture of his office;
> (3) When any association or number of persons shall act within this state as a corporation, without being duly incorporated.

*Id.* However, the statute does not apply because this proceeding is neither an action brought by the state's attorney in the name of the State nor an action brought by a private party with leave of the circuit court. It is an appeal of a county commission decision.

no declaratory relief was sought under SDCL ch 21-24, the Declaratory Judgment

Act. That is significant because:

> [T]he declaratory judgment statutes do not abrogate the
> ordinary rules of pleading, practice, procedure, and evidence.
> Even the most liberal construction that can be placed upon such
> statutes will not warrant the courts in granting affirmative
> relief by way of a declaratory judgment in the absence of
> pleading and proof warranting such relief.

State Highway Commission v. Sweetman Const. Co., 83 SD 27, 32, 153 NW2d 682,

684-685 (1967) (quoting Anderson, *Declaratory Judgments*, § 198, p410) (additional

citation omitted).

[¶8.]         Here, declaratory relief was not sought in the underlying appeal.

Moreover, a declaration of a statutory violation was immaterial considering the

procedural posture of this case. It was immaterial because the County did not

defend the contract on the allegation that there was no Corson County State's

Attorney due to Hanks unlawfully holding a judicial office. Under these

circumstances, neither the pleadings nor the proof warranted a declaratory ruling.

For these reasons, we conclude that the circuit court followed our mandate to

consider the legal effects of this apparent statutory violation.

*Whether the Contract Exceeded the Permissible Scope of Private Attorney*
*Representation of a County Served by an Elected State's Attorney*

[¶9.]         In *Hanks I* we concluded that the contract was ambiguous concerning

the intended extent of the legal services. "When there is an ambiguous contract,

evidence may be introduced to determine the intention of the parties, which is a

question of fact to be resolved by the fact finder." Ford v. Moore, 1996 SD 112, ¶10,

552 NW2d 850, 855 (citation omitted). A circuit court's findings of fact are reviewed

under the clearly erroneous standard. Miller v. Jacobsen, 2006 SD 33, ¶19, 714 NW2d 69, 76 (citation omitted). "We will overturn the trial court's findings of fact on appeal only when a complete review of the evidence leaves the Court with a definite and firm conviction that a mistake has been made." *Id.*

[¶10.] The Board first contends that the circuit court erred in relying on contract language to determine the intended scope of the agreement. The Board argues that the court could not look to the contract because we previously ruled that it was ambiguous. However, ambiguity does not foreclose consideration of the written contract: it simply allows the consideration of extrinsic evidence to determine the intent of that contract. "[I]f the contract 'is uncertain or ambiguous,' parol and extrinsic evidence may be used for clarification." Pauley v. Simonson, 2006 SD 73, ¶8, 720 NW2d 665, 668 (citing Jensen v. Pure Plant Food Intern., Ltd., 274 NW2d 261, 263-264 (SD 1979)). Therefore, the circuit court properly considered the contract language together with extrinsic evidence to determine the intended scope of the agreement.

[¶11.] This brings us to the central issue: whether this contract contemplated the displacement of Hanks as the elected state's attorney on matters in which only the state's attorney may act.[5] "SDCL [ch] 7-16 does not give the Board authority to hire a lawyer to displace the state's attorney from the duties solely designated to him." *Hanks*, 2005 SD 38 at ¶7, 694 NW2d at 700. However, a County does have limited authority to contract for private legal services in three

---

5. The Board minutes do not reflect the intended scope of the contract. They are simply silent on the subject.

areas: "(1) for criminal and civil cases with more than one lawyer in opposition, (2) for representation in counties other than Corson County or in federal and tribal courts, and (3) for legal advice and opinions to the Board." *Id*. at ¶12, 694 NW2d at 702.

*Representation in Cases and Administrative Proceedings*

[¶12.] As we noted in *Hanks I*, the first two exceptions are limited to representation in certain *cases* and *administrative proceedings*. *Id*. at ¶6 (citing SDCL 7-16-6).[6] In this case, the record reflects that Bogue's representation did not qualify under these exceptions because it was not limited to the statutorily authorized cases or administrative proceedings. It is unlikely that such representation could have been a significant component of the contract because, at the time the contract was negotiated, Corson County was not involved in cases

---

6. SDCL 7-16-6 provides:

> In all *criminal cases* and in *civil cases* if the county is a party, if two or more attorneys are employed by the defendant in a criminal *case* or by the opposite party in civil *cases* the board of county commissioners may employ counsel to assist the state's attorney in the *trial of the cases* at the compensation that is agreed upon between the board and counsel. In *civil cases or administrative proceedings* outside the county *if the county or any county officers are named as parties*, the board of county commissioners or county officers, if bringing suit in their official capacities or if sued in their individual or official capacities, may employ the county's state's attorney, deputy state's attorney, limited deputy state's attorney or any firm, association or corporation with whom the state's attorney, deputy state's attorney or limited deputy state's attorney is affiliated, to prosecute or defend the actions, and compensation in addition to the state's attorney's salary may be paid for the legal services.

(Emphasis added).

outside the County,[7] or cases in Corson County with more than one lawyer in opposition. Indeed, even though similar contracts were negotiated in 2004 and 2005, Bogue testified that she had never undertaken representation of Corson County in state, federal, or tribal court from January of 2003 through the June 2005 hearing.

[¶13.] Bogue, however, claimed that she was involved in administrative "matters." She testified "[w]e had administrative matters, and those, I believe, primarily were – I think there were some trust land issues, and I think that there's been some ongoing medical claims that dealt with [the Indian Health Service]." However, as is explained *infra*, ¶¶21-23, the evidence reflects that these administrative "matters" were not the type of administrative "proceedings" contemplated by the statute. They simply involved Bogue negotiating with third parties such as the Indian Health Service, the Bureau of Indian Affairs, or hospital administrators. Therefore, this part of Bogue's representation did not qualify as an administrative proceeding under the first two exceptions.

[¶14.] Only one part of the contemplated representation qualified under the first two exceptions. Bogue testified that under the contract, had cases developed in federal, tribal or out of county courts, she would have been required to represent the

---

7. Bogue testified that there "might have been" one federal foreclosure action in which she filed a claim, but that may not have been during the 2003 contract. Moreover, even in that action, she indicated that when it came time to finalize the matter, the closing may have been referred to Hanks to sign a stipulation on behalf of the County.

County. Therefore, the contract was valid to the extent that it was for future representation in cases and administrative proceedings allowed under SDCL 7-16-6.

*Advice and Opinions*

[¶15.]     The Board argues that legal services not involving cases or administrative proceedings qualified under the third exception involving advice and opinions. This requires us to examine the distinction between Bogue's advice and *opinions to the* County and *representation of the* County with third persons.

[¶16.]     The American Heritage College Dictionary, 1158, (3rd ed 1997), defines "represent" as: "To serve as the official and authorized delegate or agent for [another]." The Rules of Professional Conduct, although not directly applicable, recognize a distinction between such representation of a client and advice given to a client. Advice is described as providing representation *to the* client, while representation *of the* client's interests generally involves dealing with others:

> As a representative of clients, a lawyer performs various functions. As *advisor*, a lawyer *provides a client* with an informed understanding of the client's legal rights and obligations and *explains* their practical implications. As *advocate*, a lawyer zealously *asserts the client's position* under the rules of the *adversary system*. As *negotiator*, a lawyer seeks a result advantageous to the client but consistent with requirements of honest dealings with *others*. As an *evaluator*, a lawyer acts by examining a client's legal affairs and *reporting* about them *to the client* or to others.

Appendix, SDCL ch 16-18, Preamble § 2 (emphasis added).

[¶17.]     Considering this distinction and the state attorney's duty to represent a county, we believe that the third exception is limited to providing advice and opinion *to a county*. Therefore, under this exception, Bogue was limited to providing the County with an informed understanding of its legal rights and obligations.

However, the advice and opinion exception did not permit Bogue to serve as the official and authorized delegate or agent of the County in dealing with third parties. When representing the county with third parties, the representation must have involved a case or administrative proceeding falling within one of the first two exceptions. *Hanks*, 2005 SD 38 at ¶¶6, 12, 694 NW2d at 700, 702.

[¶18.] This distinction was not preserved in the legal services contemplated under the 2003 contract. That contract provided for legal services for "all civil representation" as "requested" by the Board pursuant to SDCL ch 7-16. Although the Board contends that the reference to SDCL ch 7-16 limited the legal services to the three exceptions, the evidence reflects that Bogue represented the County as its authorized delegate or agent on issues and matters with third parties not involving an actual case or administrative proceeding. That representation included dealing with the Bureau of Indian Affairs on Indian trust matters, hospitals regarding medical bills, and Indian Tribes on other Tribal matters. In fact, the Corson County Auditor, who was responsible for assigning the work, broadly described the contemplated services as: "*anything* that was strictly County, I certainly called Mr. Hanks or contacted him. *Anything* that was Federal or Native American issues, I would contact [Bogue]." (Emphasis added). Because this representation included representation of the County with third parties, the circuit court correctly concluded that some of Bogue's representation exceeded permissible advice and opinions.

[¶19.] On the other hand, some of Bogue's legal services did involve advice and opinions to the County. The record reflects that a substantial portion of Bogue's work related to advice to the Board on Indian jurisdictional matters.

Commissioner Hollenbeck testified that Indian jurisdictional matters were talked about in almost every Board meeting. Commissioner Mike Mickelson explained that, "I guess I'd like to clarify that in that we were hoping [Bogue's] expertise and assistance in these matters would keep us from being involved in litigation. We had her there for her help, not for her courtroom abilities."

[¶20.] On appeal, the Board argues that the entire contract was limited to permissible cases, administrative proceedings, and advice and opinions. The Board contends that there is no evidence supporting the court's contrary findings. We disagree. First, there was inferential evidence that the County intended to partially displace Hanks. That evidence included the fact that Bogue attended approximately twenty-nine of the thirty county commissioner meetings from January of 2003, to the trial court hearing. At the same time, Hanks attended only two or three meetings. Although Hanks was available to attend the meetings, he testified that he was never asked to attend. There was also evidence of animosity between Hanks and the Board as a result of lawsuits Hanks brought against the Board.[8] One of those suits challenged the Boards' budgetary allocation for the state's attorney's office, and the Boards' actions were found to be arbitrary and capricious.

---

8. Excluding this action, the record indicates that Hanks sued the Board four times. As an elected official, the state's attorney has a duty to sue a board of county commissioners in certain circumstances. *See* SDCL 7-16-14 (imposing on state's attorneys the responsibility of suing county commissioners for malfeasance, misappropriation of funds, or other misconduct when such suit is proper and requested).

[¶21.] But more directly, Bogue represented the County as its authorized delegate or agent in dealing with third parties on matters that did not involve any of the three exceptions. One example involved a dispute over a warranty claim concerning the siding on the county courthouse. Bogue represented the County in its attempt to get new siding from a third party, and she did not relinquish that representation until the circuit court's ruling. Bogue testified:

> Q: And the Commissioners asked you to handle that?
> A: I think they asked me to respond to that, yes.
> Q: Is that a Federal matter?
> A: No.
> Q: Is that an Indian matter?
> A: No.
> Q: You eventually turned that over to Mr. Hanks, though didn't you?
> A: Yes, I did.
> Q: Because you recognized it wasn't something that you should be in the middle of?
> A: Because of Judge Johnson's opinion.

[¶22.] Another example involved Bogue's representation of the County on Bureau of Indian Affairs notices of intent to place Corson County land in trust. Although Bogue asserted that these were administrative matters, her description of her work reflects that these matters had not progressed to an administrative proceeding. She testified:

> They send you that notification, and you are not required to respond; however if you do not respond as the taxing authority . . . if you don't respond, then they just proceed and put the land in trust. So you're required to respond back.

This exchange reflects that Bogue was responding as the authorized delegate or agent of the County; i.e., the taxing authority. And in another exchange, Bogue indicated that she was responding to third parties rather than merely providing advice to the County.

Q: When you say "they put the land in trust," who's the acting party there?
A: I'm sorry. Bureau of Indian Affairs.
Q: Are you dealing with BIA, then, on those types of issues?
A: Correct.
Q: Do you deal with them directly?
A: You deal with them directly through the superintendent office, and from there to the Interior Board of Indian Appeals. . . . [and ultimately] into [f]ederal [d]istrict [c]ourt. . . .

But again, nothing indicates that any of Bogue's responses were in an administrative proceeding before the Interior Board of Indian Appeals or in federal district court.

[¶23.]       A final example involved Bogue's representation of the County on indigent medical claims. Some of that representation involved dealing with the Indian Health Service. In describing the nature of the work, Bogue was asked: "And basically what you were doing is simply sending a letter to the Tribe?" She responded: "No. Either back to the admitting board or to the hospital or treating facility." The same type of representation occurred with the South Dakota Department of Human Services. The Auditor testified that she referred billing claims from the Department of Human Services to Bogue for handling simply because the patient was a Native American. In fact, Bogue handled most notices of hospitalization from South Dakota agencies that involved Native Americans. Concededly, on one notice of hospitalization, Bogue simply provided the Auditor with advice as to how to respond. But on others, Bogue responded to the agency on behalf of the County. And the County Auditor admitted there was no reason that Hanks could not handle the Indian Health Service matters. It appears that Hanks's

services were not used because he had once advised that the County should pay a claim, but Bogue had avoided having to pay it.

[¶24.]    In summary, the record reflects that while some of Bogue's services involved permissible advice and opinions, other services involved representation of the County with third persons in matters not involving the cases or administrative proceedings contemplated by SDCL 7-16-6. Bogue's testimony confirmed the unrestricted nature of some of her legal services. She testified:

> Q: What did you do that year to earn $25,000 under the contract?
> A: I *represented* them on *all the other issues* that *weren't being litigated. . . .*
> Q: So there's really no authorization needed for you to undertake a matter for the Commission. That doesn't need to be in the minutes with authorization for you to do it?
> A: No. Because I also give advice to the Board.

(Emphasis added). However, as explained above, some of this representation went beyond advice and opinions. It involved representation of the County with third persons on matters not involving a case or administrative proceeding. In fact, the Board apparently believed that it had the right to contract with private counsel for official representation in matters not involving the statutory exception for cases or administrative proceedings. In its proposed Conclusion of Law 11, the Board specifically suggested that the circuit court adopt the position that "Bogue [was] not prohibited from contacting third parties on behalf of the Board."

[¶25.]    We hold that the circuit court correctly found that the contract contemplated some representation of the County outside the three exceptions recognized in SDCL 7-16-6 and *Hanks I*, 2005 SD 38 at ¶¶6, 12, 694 NW2d at 700,

702. For this reason, the circuit court correctly concluded that the contract was void to the extent that it exceeded those limitations.

[¶26.] However, there is an inconsistency between the circuit court's conclusions of law and judgment. The court concluded that: *"To the extent* that the Bogue contract requires Bogue to provide services beyond the . . . three areas [enumerated in *Hanks I*] . . . it is void." (Emphasis added.) This partial voiding of the contract is supported by the facts that the contract contemplated permissible representation in future litigation should it have arisen and Bogue provided some permissible advice and opinions.[9] However, inconsistent with the evidence and the circuit court's own conclusion of law, the final judgment voided the entire contract. We therefore remand with directions to modify the judgment consistent with the circuit court's conclusions of law partially voiding the contract.

[¶27.] Affirmed and remanded for further proceedings consistent with this opinion.

[¶28.] GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, concur.

[¶29.] SABERS, Justice, concurs in result.

---

9. The evidence further reflects that Hanks was not totally displaced. He continued to represent the County on many other issues and matters. Examples included such things as a sublease of county property, an indigent burial, the correction of tax deeds, and matters of interest to the county treasurer, register of deeds, sheriff, and director of equalization. The County Auditor testified that to her knowledge, no matters from those offices were referred to anyone other than Hanks.

#24003

SABERS, Justice (concurring in result in part and writing specially).

[¶30.]     I would affirm the circuit court in all respects and therefore concur in result in part only.