#24232, 24257-rev&rem-JENSEN, Circuit Judge
**2007 SD 93**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

NORTHSTREAM INVESTMENTS, INC.,          Plaintiff and Appellant,

v.

1804 COUNTRY STORE CO.,          Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE MAX A. GORS
Judge

\* \* \* \*

TIMOTHY M. ENGEL and
BRITTANY L. NOVOTNY of
May, Adam, Gerdes & Thompson          Attorneys for plaintiff
Pierre, South Dakota          and appellant.

JAMES E. CARLON of
Carlon Law Office          Attorney for defendant
Pierre, South Dakota          and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 21, 2007

OPINION FILED 8/29/07

#24232, 24257

JENSEN, Circuit Judge

[¶1.]     This is the second appeal by Northstream Investments Inc. (Northstream) in its action to enforce a secured loan made by Security Bank N.A. (Security) to the 1804 Country Store Co. (1804 Store). The continuing question is the validity of a purported assignment of the 1804 Store loan from Security to Northstream. In Northstream Inv., Inc. v. 1804 Country Store Co., 2005 SD 61, ¶ 23, 697 NW2d 762, 768 (*Northstream I*), the Court remanded the case for trial after reversing the trial court's summary judgment decision determining the assignment was invalid. This appeal is from the trial court's decision on remand invalidating the assignment following trial. We reverse and remand to the trial court with instructions to enter judgment in favor of Northstream.

FACTS

[¶2.]     In September 1991 the 1804 Store executed two promissory notes evidencing a loan obligation to Security. The notes were secured by a real estate mortgage, security agreement and stock pledge agreement. On June 10, 1992, Security's shareholders voted to voluntarily liquidate the bank's assets. The shareholders appointed Paul Nordstrom (Nordstrom) as liquidating agent for the bank and authorized Security's board of directors to continue their duties until the bank's assets were liquidated. Nordstrom controlled the majority interest in Security as the majority shareholder of Northstream, the bank's holding company. The shareholders also approved the sale of substantially all of Security's assets to First National Bank of Pierre (First National) as a part of the liquidation. First National chose not to purchase the 1804 Store loan and a number of other loans from Security.

[¶3.]     After the sale to First National was completed, Security held its final directors meeting on December 22, 1992.  Security continued to hold the loans rejected by First National, including the 1804 Store loan, at the time of the meeting.  The directors unanimously approved the following resolution at the meeting:

> A motion was made by Gaylord Norman to appoint Paul Nordstrom to serve as liquidating agent to transfer the remaining assets of [Security] to the bank's holding company, Northstream Investments, the sole remaining shareholder, for exchange of stock.

[¶4.]     The December 22, 1992 Minutes (Minutes) were typewritten and contain the typewritten words "Secretary" and "Marcie Nordstrom" at the bottom of the Minutes.  No handwritten signature appears on the Minutes.  Marcie Nordstrom was the corporate secretary for Security at this time.  She testified that she did not sign the Minutes, but intended the typewritten name to be her signature on the document.

[¶5.]     Trial testimony was undisputed that Security's directors intended and believed that they assigned the remaining assets, including the 1804 Store loan, to Northstream at the December 22, 1992 meeting.  Nordstrom testified that Northstream gave written notice to each borrower, including the 1804 Store, of the loans transferred from Security to Northstream.  A written notice purportedly sent to all such borrowers was introduced into evidence, but no documentation was introduced to show that the notice was actually sent to the 1804 Store.

[¶6.]     Harvey Wald (Wald), the sole shareholder of the1804 Store, testified that the 1804 Store did not receive written notice of the assignment.  Wald testified that the 1804 Store was aware of Security's liquidation and began making

payments to First National in January 1993 believing the loan was included in the First National sale. The 1804 Store was subsequently notified by phone that its loan had been transferred to Northstream and that loan payments should be made to Northstream. The 1804 Store then began making monthly payments to Northstream and continued to do so for more than six years.

[¶7.]	The 1804 Store defaulted on its monthly payments in October 1999 and Northstream commenced this action for foreclosure of the mortgage; replevin of the personal property; and a judgment on the notes. Following a trial on remand from the first appeal, the trial court determined that the 1804 Store loan was a valid loan, but Northstream had no right to enforce the loan obligation because it was not properly assigned to Northstream. The trial court entered findings of fact and conclusion of law and dismissed the action. Northstream appeals the trial court's decision arguing that Security's directors assigned the 1804 Store loan to Northstream at the December 22, 1992 director's meeting and that the Minutes reflect that transfer.

## SCOPE OF REVIEW

[¶8.]	On appeal the trial court's findings of fact are reviewed under the clearly erroneous standard of review. Myers v. Eich, 2006 SD 69, ¶ 18, 720 NW2d 76, 82 (additional citations omitted). Conclusions of law are reviewed under the de novo standard of review. Credit Collections Services, Inc. v. Pesicka, 2006 SD 81, ¶ 5, 721 NW2d 474, 476. Mixed questions of law and fact are reviewed de novo. Johnson v. Light, 2006 SD 88, ¶ 10, 723 NW2d 125, 127.

DECISION

[¶9.]     The trial court invalidated the purported assignment between Security and Northstream for three reasons, all of which related to the statute of frauds defense raised by the 1804 Store. First, the trial court concluded the Minutes did not satisfy the signature requirement of the statute of frauds because they were not hand signed by Security's corporate secretary. Second, the trial court reasoned that the Minutes did not clearly show a present intent by Security to assign the 1804 Store loan to Northstream. Finally, the trial court determined that the subject matter of the assignment was not sufficiently described in the Minutes. Northstream claims that the trial court erred as to all of these determinations.

[¶10.]     The 1804 Store does not contest the validity of its loan obligation in this litigation. It only disputes the validity of the purported assignment between Security and Northstream. Neither party has addressed the question of whether the 1804 Store has standing to assert the statute of frauds defense as it relates to the purported assignment between Security and Northstream.[1]

---

1.  Restatement Contracts (Second) § 144 (1981) provides that "[o]nly parties to a contract and their transferees and successors can take advantage of the Statute of Frauds." Comment b to Restatement (Second) Contracts § 324 (1981) addressing the "Mode of Assignment in General," states that assignments required to be in writing by the Statute of Frauds generally may not be enforced:

    against an assignor unless there is a memorandum in writing or some substitute formality, but under the rule stated in § 144 of this Restatement they cannot ordinarily be asserted by third persons, including the obligor of an assigned right. Notwithstanding non-compliance with the Statute, therefore, the assignment is effective against the obligor. Moreover, the obligor discharges his duty by performing in accordance with the assignment, and the assignee can keep the benefit of the performance.

[¶11.]     We do not decide this appeal on the standing issue because it has not been properly raised.  Nor do we adopt the authorities discussed in the footnote below.  Nonetheless, the standing issue bears mentioning because it highlights the difficulty of the 1804 Store as a stranger to the purported assignment relying upon the statute of frauds defense.  "The primary purpose of the statute of frauds is evidentiary in nature." *Northstream I*, 2005 SD 61, ¶ 17, 697 NW2d at 766.  The writing requirement of the statute of frauds ensures reliable evidence is presented before a contract obligation is enforced against one of the parties to the contract.  *See* SDCL 53-8-2.  In this instance, the two parties to the purported assignment, Security and Northstream, both agree that the 1804 Store loan was assigned to Northstream on December 22, 1992.  This undisputed fact, along with the writing relied upon by Northstream, is ultimately dispositive of this appeal.

*Signature Requirement*

[¶12.]     The Court concluded in *Northstream I* that the mortgage assignment must be in writing because it involves an interest in real estate.  2005 SD 61, ¶¶ 12-15, 697 NW2d at 765-66.  The statute of frauds contained in SDCL 53-8-2 provides that those contracts required to be in writing are not enforceable "unless the contract or some memorandum thereof is in writing and *subscribed* by the party to be charged. . . ." (emphasis added).  The trial court's decision seems to interpret the statute of frauds as requiring a handwritten signature on the document.  While

---

*See also* Fjelland v. Wemhoff, 249 NW2d 634, 638 (Iowa 1977) (stating that if both parties admit the existence of an oral contract, it is irrelevant that a stranger objects)(overruled on other grounds).

the Court has not previously addressed the meaning of the term "subscribed" under SDCL 53-8-2, the term is inclusive of more than a handwritten signature.

[¶13.] Courts from other jurisdictions have consistently approved of a typewritten signature to authenticate a memorandum or contract if the party intended the typewritten name or symbol to be his or her act authenticating the document. Joseph Denuzio Fruit Co. v. Crane, 188 F2d 569 (9th Cir 1951), *cert denied* 342 US 820, 72 SCt 37, 96 LEd 620 (1951); Rader Co. v. Stone, 178 CalApp3d 10, 223 CalRptr 806, 812 (1986); Irving v. Goodimate Co., 320 Mass 454, 458, 70 NE2d 414, 416 (1946); Hansen v. Hill, 215 Neb 573, 579, 340 NW2d 8, 12 (1983); Radke v. Brenon, 271 Minn 35, 40, 134 NW2d 887, 891 (1965); Hillstrom v. Gosney, 188 Mont 388, 394, 614 P2d 466, 469 (1980); Weber v. DeCecco, 1 NJSuper 353, 356, 61 A2d 651, 653 (1948); Frohn v. Central Trust Co., 72 NE2d 303, 304 (OhioCtApp 1946); *see also* Restatement Contracts (Second) § 210 (1932); Restatement (Second) Contracts § 134 (1981). "The traditional form of signature is, of course, the handwritten name of the signer. But initials or any symbol may also be used; and the signature may be written in pencil, typed, printed, made with a rubber stamp or impressed into the paper." George W. Wadkins Family v. Messenger, 115 Idaho 386, 766 P2d 1267, 1270 (IdahoCtApp 1988). "It is generally held that a typewritten 'signature' may be sufficient to satisfy the requirements of the Statute of Frauds, but only if the party intends to authenticate the instrument by that act." Jerry Harmon Motors, Inc. v, First National Bank and Trust Co., 472 NW2d 748, 753 (ND 1991)(citations omitted).

[¶14.]     We hold that the term "subscribed" contained in SDCL 53-8-2 may include a typewritten name or other symbol of authentication where the party intends such act to be his or her signature on the document.  The trial court concluded that the corporate secretary's typewritten name "did not satisfy the signature requirement," but made no finding whether the corporate secretary intended the typewritten name to be her signature on the Minutes. [2]

[¶15.]     Marcie Nordstrom testified that she intended the typewritten name to be her signature on the Minutes.  The testimony of the other former officers and directors of Security involved in the meeting supported her testimony.  Security was the party to be charged with the obligation to assign the 1804 Store loan to Northstream for the purpose of the statute of frauds.  Where the corporate secretary, authorized to act on behalf of the party to be charged with the obligation, testifies that she intended the typewritten name to be her signature and authentication of the document, this satisfies the evidentiary purpose of the statute of frauds as a matter of law.  There is no factual issue on intent in this record and the Minutes were subscribed by the party to be charged under SDCL 53-8-2.  *But see Jerry Harmon Motors*, 472 NW2d at 753, (holding by the North Dakota Supreme Court that a factual issue on intent existed for the jury where the party to be

---

2.     The trial court placed reliance upon the corporate secretary's testimony that she customarily hand signed the Minutes of the prior directors meeting after their approval at the next meeting.  She testified that she did not hand sign the Minutes here because there were no further meetings after the Minutes.  It is noteworthy that the corporate Minutes introduced into evidence that were hand signed in the past all had a line for the signature above the typewritten name.  The Minutes do not have such a line above the typewritten name.

charged disputed that a corporate officer's typewritten name below a signature line was intended to be his signature).

*Present Intent to Assign the Loan*

[¶16.] The trial court found that the "Minutes do not demonstrate clear evidence of a present intent to assign the 1804 Store loan." The Court stated in *Northstream I* that "it must be clear that the party intended a present transfer of rights and did not merely bind himself to make a future transfer." 2005 SD 61, ¶ 15, 697 NW2d at 766. "Typically, any language, however informal, will be sufficient to show the intent of the assignor." *Id.* The Court in *Northstream I* determined from the Minutes that an ambiguity or fact question existed concerning "whether Security Bank's Board of Directors intended their action to be a present assignment of their interest, or a statement merely authorizing the assignment to be carried out at a later date." *Id.* ¶ 20. Because there was absence from the record of "any testimony as to the intent of the [directors]" the Court remanded the case for such evidence to be received and considered. *Id.*

[¶17.] We have held that where a contract is uncertain or ambiguous, parol or extrinsic evidence may be used to determine the parties' intent. Kling v. Stern, 2007 SD 51, ¶ 8, 733 NW2d 615, 618; Hanks v. Corson County Board of County Commissioners, 2007 SD 10, ¶ 10, 727 NW2d 296, 301 (quoting Pauley v. Simonson, 2006 SD 73, ¶ 8, 720 NW2d 665, 668 (citing Jensen v. Pure Plant Food Intern., Ltd., 274 NW2d 261, 263-264 (SD 1979))). The trial court received parol evidence consistent with the directive in *Northstream I*, but did not consider this uncontroverted testimony on the issue of the intent to assign.

[¶18.] This evidence shows that December 22 was the final meeting of Security's directors. Security's directors intended and believed the remaining assets, including the 1804 Store loan, were assigned from Security to Northstream at the meeting. Following this meeting, the attorney handling Security's liquidation sent Nordstrom a letter on January 15, 1993, stating, "I understand you have completed the transfer of all of the assets of the Bank to the Bank's shareholders. . . ." This letter directs Nordstrom to send the final report of Security's liquidation to the Comptroller of the Currency. Nordstrom sent the final report of liquidation to the Comptroller of the Currency, along with the Bank's original charter, on January 21, 1993. The final report of liquidation, signed by Nordstrom as being true and correct, represented that Security had no remaining assets.

[¶19.] The 1804 Store presented no evidence to dispute this testimony. Wald testified that he questioned whether an assignment was made to Northstream. However, the 1804 Store began making monthly payments to Northstream after being advised that the loan was transferred to Northstream. The 1804 Store continued to do so for more than six years until the default occurred.

[¶20.] The trial court's findings of fact on the issue of intent are subject to the clearly erroneous standard of review. Under clearly erroneous review, "[w]e will overturn the trial court's findings of fact on appeal only when a complete review of the evidence leaves the Court with a definite and firm conviction that a mistake has been made." *Hanks*, 2007 SD 10, ¶ 9, 727 NW2d at 301. In *Hanks,* we upheld the trial court's interpretation of an ambiguous contract where the trial court "properly

considered the contract language together with extrinsic evidence to determine the intended scope of the agreement." *Id.* ¶ 10.

[¶21.]     In its memorandum opinion incorporated into the findings of fact and conclusions of law, the trial court stated that it believed testimony that Security's directors intended to transfer the remaining assets from Security to Northstream at the December 22, 1992 meeting. However, the trial court rejected this extrinsic evidence stating that this "intent must be expressed in writing, which it is not." The trial court's failure to consider the extrinsic evidence was contrary to the Court's direction in *Northstream I* to consider testimony as to the intent of the directors of Security at the December 22, 1992 meeting.

[¶22.]     The Minutes provide satisfactory written evidence under the statute of frauds to show that Security intended to assign its remaining assets to Northstream. The undisputed testimony, which the trial court believed, clearly shows that Security had a present intent at the December 22, 1992 meeting to make an assignment to Northstream. We are convinced on this record that the trial court was clearly erroneous in determining otherwise.

*Sufficiency of the description of the subject matter*

[¶23.]     The language of an assignment must "describe the subject matter of the assignment." *Northstream I*, 2005 SD 61, ¶ 15, 697 NW2d at 766. The Minutes provide only a general description of the subject matter of the assignment. The description consists of the "remaining assets of Security." The trial court found that the Minutes did not "describe any asset to be assigned or the subject matter of the

assignment" and concluded that "the remaining assets" language did not satisfy the statute of frauds.

[¶24.] The weight of authorities suggest that the statute of frauds does not render a general written description of the subject matter of an assignment unenforceable where the more specific description is proved through extrinsic evidence. The description of the subject matter of an assignment "need not be done with any greater particularity than is actually necessary, with the aid of surrounding circumstances." 6 AmJur2d *Assignments* § 117. The sufficiency of the description of the subject matter of the assignment "var[ies] to some extent with the facts of an individual case[,]" if the description is sufficiently definite that, "armed with it and aided by competent extraneous evidence, parol or otherwise, the property covered may with certainty be identified, the description is sufficient." Northwestern Nat'l Bank of Minneapolis v. A.M. Cameron Co., 212 F2d 484, 485 (1954). However, if the description is "so inherently vague and indefinite" that this may not be done then extraneous evidence will not "supply the deficiency." *Id*.

[¶25.] This is consistent with our case law allowing parol evidence to provide the specific description of the subject matter of a contract required to be in writing. "A general description of the land which is the subject matter of the contract is sufficient, and parol evidence may be admitted to provide the more particular description." Jacobson v. Gulbransen, 2001 SD 33, ¶ 15, 623 NW2d 84, 89 (citing Amdahl v. Lowe, 471 NW2d 771, 775 (SD 1991)). The *Jacobson* court further stated:

> The agreement itself need not be the writing relied upon,
> a memorandum evidencing the obligation is sufficient.

> SDCL 53-8-2. 'The memorandum serves to furnish written evidence of the obligation to be enforced against the party who subscribes his name to the memorandum; that is, a memorandum is not required to make a contract but merely to evidence in writing that a contract has been entered into.' The memorandum need not embody the exact terms of the contract; 'it is sufficient that the substance of a contract for the purchase of real property is inferred from the writing[.]'

*Id.* (citing Wiggins v. Shewmake, 374 NW2d 111, 114 (SD 1985)).

[¶26.] The Minutes evidence that Security was assigning all its assets to Northstream. The testimony at trial was undisputed that Security and Northstream both understood that these assets included the loans which were not sold to First National, including the 1804 Store loan. This evidence satisfies both the statute of frauds and the requirement for a valid assignment to adequately describe the subject matter of the assignment. "There is no fatal ambiguity if the contract terms are sufficiently certain to make the acts required of each party clearly ascertainable." *Amdahl,* 471 NW2d at 775.

[¶27.] The trial court erred in its legal conclusion that the Minutes failed to "adequately describe the subject matter" of the assignment. Further, there are no disputed facts as to the specific assets assigned to Northstream to create any issue of fact, and Northstream is entitled to judgment as a matter of law on this issue.

CONCLUSION

[¶28.] *Northstream I* stated that on remand the record should be developed on the issue of the notice of assignment to the 1804 Store. The issue of the notice of assignment to the 1804 Store is not directly raised by either party on this appeal, but the trial court's findings and the record show that notice was provided to the 1804 Store, albeit both belated and informal. In *Northstream I*, the Court stated

that "no special form of notice is required; any notice is adequate, even if not formally given." 2005 SD 61, ¶ 18, 697 NW2d at 767. The record establishes the requisite notice for an assignment and that the 1804 Store loan was assigned to Northstream. Accordingly, Northstream has a right to enforce the loan against the 1804 Store.

[¶29.] We reverse the dismissal of this action by the trial court and remand for entry of a judgment in favor of Northstream consistent with its claim for relief and the evidence presented at trial.

[¶30.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP and MEIERHENRY, Justices, concur.

[¶31.] JENSEN, Circuit Judge, for ZINTER, Justice, disqualified.